## UNITED STATES v. UPDIKE et al.

(District Court, D. Nebraska, Omaha Division. August 15, 1924.)

### No. 651.

**1. Internal revenue ☞7—Corporation dissolved prior to approval of act held subject to tax imposed as to earnings from January first to dissolution.**

Corporation dissolved during year 1917, prior to approval of Revenue Act Oct. 3, 1917 (Comp. St. 1918, § 6336j et seq.), is subject to income tax imposed by that act, as to earnings from January 1, 1917, to date of dissolution; statute clearly disclosing such to be intent of Congress.

**2. Internal revenue ☞7 — Regulation as to method of enforcing income tax against dissolving corporation held valid.**

Regulation 33, art. 61, promulgated after approval of Revenue Act Oct. 3, 1917 (Comp. St. 1918, § 6336j et seq.), requiring corporations, dissolving during year to reserve funds to cover income tax, and, failing that, providing that tax should be collected by suit against stockholders, was valid and fair to taxpayers.

**3. Internal revenue ☞28—That dissolution of corporation and distribution of assets was legal at time held not to render subsequent suit against stockholders for income tax inequitable.**

Where corporation was dissolved in 1917, prior to enactment of Revenue Act Oct. 3, 1917 (Comp. St. 1918, § 6336j et seq.), stockholders receiving assets, held, that subsequent suit against stockholders under act for tax as to earnings from January 1st to dissolution did not contravene settled principles of equity, because there is no trust doctrine recognized by federal courts which could reach assets so distributed; government being as to such tax at dissolution in same position as existing creditor, especially in view of Regulation 33, art. 61.

**4. Internal revenue ☞28—Rule stated as to when limitation begins to run against action for income tax.**

Under Revenue Act 1921, § 250(d), being Comp. St. Ann. Supp. 1923, § 6336⅛tt, limitation does not begin to run against an action to recover any income tax imposed by any of the laws specified from 1909 to 1921 until taxpayer honestly makes and files his return under particular act imposing tax sought to be collected.

**5. Limitation of actions ☞11(1) — United States ☞133—Rule stated as to effect of laches or general statutes of limitations on government.**

Neither general statutes of limitations nor general doctrines of laches apply to government.

**6. Internal revenue ☞28—Return of taxpayer held insufficient to start limitations running against action for income tax.**

Where corporation was dissolved in 1917, prior to approval of Revenue Act Oct. 3, 1917 (Comp. St. 1918, § 6336j et seq.), fact that return was made under Revenue Act Sept. 8, 1916, or under Act March 3, 1917, was of no avail to stockholders of dissolved corporation to set in motion limitations as against government to sue for income tax, imposed by Act Oct. 3, 1917, as to earnings from January 1, 1917, to dissolution, though all acts were frankly and fully disclosed to government officers, and they were of opinion that corporation was not liable under latter act.

In Equity. Suit by the United States against Nelson B. Updike and others. Decree for complainant.

S. Duffield Mitchell, Asst. Sol. Internal Revenue Dept., and A. Calder Mackay, Sp. Atty. Internal Revenue Dept., both of Washington, D. C., and James C. Kinsler, U. S. Atty., of Omaha, Neb. (Nelson T.

Hartson, Sol. Internal Revenue Dept., of Washington, D. C., on the brief), for the United States.

Francis A. Brogan and Brogan, Ellick & Raymond, all of Omaha, Neb., for defendants.

WOODROUGH, District Judge. The Missouri Valley Elevator Company was organized in Nebraska, in 1910, and continued in business until July 31, 1917, when it was dissolved in accordance with the terms of the Nebraska law (Comp. St. 1922, § 447 et seq.) providing for the dissolution of corporations, and its assets · were distributed to the persons who were then stockholders. The government brings this suit in equity to compel the stockholders to account for the assets so received by them, to the extent of paying to the government the amount of taxes which were assessed on account of the corporation's earnings from January 1, 1917, to May 31, 1917, under the provisions of the Revenue Act of October 3, 1917 (Comp. St. 1918, § 6336j et seq.).

The corporation had, pursuant to the regulations, designated May 31, 1917, as the close of its fiscal year, and seasonably made its returns and paid the taxes due from it under the Revenue Acts of 1916 and March 3, 1917. But after the dissolution of the corporation, and the distribution of its assets to the stockholders, all accomplished about August 1, 1917, the position was taken by those who had been the managing officers that the provisions of the Revenue Act of October 3, 1917, were without application to the corporation so dissolved, its officers, or its stockholders.

[1] Such was also the ruling of the Commissioner of Internal Revenue, as shown by the letter of Deputy Commissioner L. F. Spear to two taxpayers in New York, dated October 7, 1917, declaring that a corporation dissolved in June, 1917, would not be subject to the tax imposed by the Act of October 3, 1917. But on November 17, 1917, this ruling was reversed, and upon the authority of the decision of the United States Circuit Court of Appeals in Brady v. Anderson, 240 Fed. 665, it was ruled that a corporation which was dissolved during the year 1917, prior to the approval of the Act of October 3, 1917, is subject to the tax imposed by that act. Regulation 33, article 61, was thereupon promulgated as follows:

"Art. 61. *Corporation Dissolved Prior to October 4, 1917.*—A corporation which was dissolved in 1917, prior to passage of the War Revenue Act of October 3, 1917, is subject to tax under the Act of September 8, 1916, as amended, and also to the war income tax and the war excess profits tax imposed by the Act of October 3, 1917. Brady et al. v. Anderson, 240 Fed. 665. A corporation so situated will make a return on revised form 1031, covering the period in 1917 during which it was in business prior to its dissolution. If it shall have previously made a return covering this period and shall have paid any excess profits tax under the Act of March 3, 1917, it shall be entitled to credit for the amount of such tax so paid against any excess profits tax assessable against it under title II of the Act of October 3, 1917."

In line with the position that the law of October 3, 1917, imposed no tax on a dissolved corporation, its former secretary on March 26, 1918, returned to the collector of revenue at Omaha the blank form No. 1031, referred to in regulation 33, article 61, called "Corporation Income Tax Return," and left it entirely blank, except the name and address of the corporation typewritten in the space provided therefor. Accompanying the blank was a letter from the former secretary, reciting the dissolution of the corporation and the distribution of its assets to the stockholders after reserving and paying the federal income tax and excess profit tax for the fractional period of the year 1917 then ascertainable, and pursuant to the returns of the corporation duly made, amended, and filed. The former secretary of the company further stated in the letter:

"I am addressing this communication to you because I held the position of secretary of said corporation prior to its dissolution, and because I am aware of the regulation known as article 61 of the Regulations in reference to the income tax of October 3, 1917 (but which I am advised is erroneous), and in order that a statement of the facts in this matter may be made for your records."

Afterwards, and in October, 1918, the Commissioner caused an examination to be made of the books and records of the corporation, and an inspector working under the Commissioner made up an excess profits tax return for the corporation on the form 1031 specified in regulation 33, article 61, together with a report reciting, among other facts and figures, that there was no one with authority to sign any return. The Commissioner thereupon, and in November, 1919, assessed against the corporation an additional tax according to the

rates provided in the Act of October 3, 1917, in the sum of $34,561.92, which, being unpaid, is the subject of this suit. There is no evidence that the audits and computations made by the Commissioner are wrong, but the defendants deny liability. They insist that the first ruling of the department was right, and that the later and present attitude is wrong.

A case presenting the question squarely, whether tax should be collected from the stockholders of a corporation earning income during the period covered by the tax law, but dissolved before final enactment of the law, was before the United States District Court of Montana in United States v. McHatton, 266 Fed. 602. It was held:

"It was the corporation's duty to pay all taxes lawfully imposed upon it. Taxes can be thus imposed by retrospective law. Brushaber v. Railway Co., 240 U. S. 20, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414. The corporate duty of payment cannot be escaped by dissolution. U. S. v. Loading Co. (D. C.) 192 Fed. 223. And see 28 Op. Attys. Gen. 241; Brady Case, 240 Fed. 665, 153 C. C. A. 463, certiorari denied 244 U. S. 654, 37 Sup. Ct. 652, 61 L. Ed. 1373. Although taxes are not debts, and in respect to them the government is not a creditor, both being of higher nature, no reason is perceived why they are not within the principle that those who gratuitously take all a debtor's property, to the extent thereof, may be held to respond for his present debts and obligations, inchoate or vested, or for the damages thereby inflicted, the sometime 'trust fund' doctrine, so far as corporations are concerned. When defendants took the corporation's property, there was right in plaintiff to thereafter impose further taxes. To pay any such taxes was then an obligation of the corporation. The right was in its nature inchoate; the obligation was contingent. Defendants took subject thereto. The contingency happened; the right vested. The Act of September 8, 1916, to this extent takes effect by relation as of the first of the year, and prior to distribution and dissolution. Accordingly defendants are liable."

Also in United States v. Boss & Peake, 285 Fed. 410, the United States District Court of Oregon reached the same conclusion in a case where the tax involved was under the Act of October 3, 1917, as it is in the present case, and the corporation was dissolved in June of that year. The court there said that the tax provision of the Act of October 3, 1917, is retrospective as of January 1, 1917, and that it is not unconstitutional, and that stockholders taking the assets upon dissolution of the corporation were liable for the payment of the tax, and decree was entered for the amount of the tax due, with interest and penalty.

It is urged that those precedents ought not to be followed in this case. The defendants here have pleaded in their answer "that if the said Act of October 3, 1917, be so construed as to become applicable to a corporation organized under the laws of the State of Nebraska, whose corporate existence had been terminated in accordance with such laws prior to the passage of said act, or if the said act be so construed as to make unlawful or to invalidate the lawful distribution of the assets of said corporation, the Missouri Valley Elevator Company made to its stockholders prior to the passage of the act, and while such distribution was lawful and permitted under existing laws, then the said Act of October 3, 1917, in so far as it may be so construed or applied, is contrary to the provisions of the Fifth Amendment to the Constitution of the United States, in that it deprives these defendants of their property without due process of law, and denies to them the equal protection of the laws, and will result in taking their property for public use without just compensation."

They have thus squarely presented the question of the constitutionality of the law on which the government's case rests, if it is to be construed so as to impose liability on defendant. But in the argument counsel for defendants have further insisted that, even if the law so construed were constitutional, and even if Congress did have power to enforce such a tax against stockholders of the dissolved corporation, that in fact Congress did not exercise such power. They insist that Congress did not, by its language in this act, include a corporation which had dissolved prior to the enactment, and, a fortiori, did not impose liability on the stockholders.

The Act of October 3, 1917 (Comp. St. 1918, § 6336jj), provides:

"Sec. 4. That in addition to the tax imposed by subdivision (a) of section ten of such Act of September 8, 1916, as amended by this act, there shall be levied, assessed, collected, and paid a like tax of four per centum upon the income received in the calendar year 1917 and every calendar year

thereafter, by every corporation, * * * subject to the tax imposed by that subdivision of that section, except that if it has fixed its own fiscal year, the tax imposed by this section for the fiscal year ending during the calendar year 1917, shall be levied, assessed, collected, and paid only on that proportion of its income for such fiscal year which the period between January 1, 1917, and the end of such fiscal year bears to the whole of such fiscal year."

The provision of the law of 1916 (Comp. St. § 6336j) referred to, and designating the corporations subject to the tax, is:

"Sec. 10 (a). That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, * * * organized in the United States, no matter how created or organized, * * * a tax," etc.

A reading of the statute itself makes it clear that it was the will and the intention of Congress to derive revenue from the profits that were made by this corporation during the part of the year that it was in business. It explicitly states: "There shall be levied, assessed, collected and paid a tax upon the income received by every corporation ·organized within the United States." And the period specifically includes the period during which the income was received by this corporation. The statute does not speak as to corporations "organized and existing," but doubtless of set purpose departs from the familiar phrase "corporations organized and existing," so as to broaden the application of the law and in a positive way include every corporation organized in the United States, and so to include this corporation, which was a corporation organized in the United States, and which did receive an income within the period, and as to that income Congress specifically imposes the tax. It would appear, therefore, that if a course of reasoning can be followed to the conclusion that no tax became due in respect of this income, the conclusion could not rest upon any failure of Congress to declare its will and intent to the contrary with clearness and certainty.

But it is argued that, because an income tax is a tax in personam, it must fail against a corporation dissolved before the law imposing the tax was finally enacted. A similar contention as to the nature of income taxes was very elaborately presented in a case involving the constitutionality of the Oklahoma income tax law. The state of Oklahoma laid an income tax upon incomes of nonresidents derived from their business carried on within the state. It was urged that an income tax is in its nature a personal tax, or a "subjective tax imposing personal liability upon the recipient of the income," and that as to a nonresident the state had no power to impose such liability, because the person was not within its territorial jurisdiction. The Supreme Court said:

"This argument, upon analysis, resolves itself into a mere question of definitions, and has no legitimate bearing upon any question raised under the federal Constitution." Shaffer v. Carter, 252 U. S. 55, 40 Sup. Ct. 226, 64 L. Ed. 445.

It would seem the same answer is applicable here. It is conceded that Congress had the power to lay the tax in respect of the income of the corporation, and in most positive and direct terms it declared its will and purpose to do so. If, being defined as a tax in personam, the tax would fail because of prior dissolution of the corporation, then the mere question of the definition ought not to be deemed to have any legitimate bearing upon the duty of the court to carry out the expressed will of Congress in a matter as to which it concededly had constitutional power to legislate.

But it is insisted that, because no way is set forth in the statute to ascertain the income or to assess or collect the tax, and no person is there designated to make return or payment, the tax must fail on that account, and this argument is naturally interwoven with the insistence upon the nature of the tax as one in personam. In the enactment of the law of October 3, 1917, Congress had in mind that instances would arise where the provisions for its enforcement in the collection of the tax would be inadequate or lacking, and section 1003 (Comp. St. 1918, § 6349a) is as follows:

"That in all cases where the method of collecting the tax imposed by this act is not specifically provided, the tax shall be collected in such manner as the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury may prescribe."

[2] As no method of collecting this tax against a dissolved corporation was specifically provided in the act, it became the duty of the Commissioner to make regulations, and, as he has done so, there is open to the court only the inquiry whether his regulations are reasonable and fairly calculated to carry out the expressed will of Congress. Under his regulations, reserva-

tion of funds must be made by dissolving corporations to cover the tax, and, failing that, the tax shall be collected by suit against the stockholders. Such regulations appear to be in conformity with the duty imposed by section 1003, and suggest no unfairness towards the taxpayers, and are unassailable in the courts. The amount of the tax having been determined by audit of the books and records of the corporation, and information duly received by the commissioner, and assessed and levied according to the rates prescribed by the act, there remained the lawful duty to bring suit as prescribed by lawful regulation.

[3] It is contended, however, that the suit against the stockholders contravenes settled principles of equity, not only because there has not been a judgment at law previously obtained against the corporation itself, but because there is no trust fund doctrine recognized by federal courts which could reach the assets in the hands of the stockholders receiving them upon lawful dissolution. It is presented that at the time the corporation dissolved the dissolution was legal and in strict conformity with the laws of the state, and that therefore no wrong was involved in receiving the assets, and no trust could arise with respect to them.

It was stated by counsel in argument that the defense would not rest upon the first suggestion as to the failure of the government to sue the corporation at law before bringing this suit in equity against the stockholders, because there was denial of liability as to either the corporation or stockholders, and mere multiplication of suits would be useless.

To my mind the expressions of the court in the analogous case of United States v. McHatton, supra, correctly and adequately dispose of the issue:

"When defendants took the corporation's property, there was right in plaintiff to thereafter impose further taxes. To pay any such taxes was then an obligation of the corporation. The right was in its nature inchoate; the obligation was contingent. Defendants took subject thereto. The contingency happened; the right vested. The act * * * to this extent takes effect by relation as of the first of the year, and prior to distribution and dissolution."

In the subsequent case of United States v. Boss & Peake the same view of the law was adopted and applied, almost without discussion. The court said (285 Fed. 410, 418):

"It is claimed by Boss that, at the time of the transaction between him and Peake [concerning transfer of stock], the tax was not in their minds, and that therefore it did not enter as an element in their agreement; that only the current liabilities were assumed by him. * * * The parties were * * * required to take notice of the power of Congress to enact a retroactive measure of the kind denoted by the Act of October 3, 1917. * * * The tax provision of the Act of October 3, 1917, is retrospective as of January 1, 1917, but the act is not unconstitutional because of that provision."

By way of amplification merely it may be taken as true that the trust fund doctrine does not apply in the federal courts to raise any trust in those funds of a corporation which have been paid out at a time when the corporation was not rendered insolvent thereby, or was not insolvent, and only applies to the benefit of creditors who were such at the time of the disbursements. But if the construction of this tax law, which seems so obvious to me, is correct, then the government was, at the time of the dissolution, in the same position as an existing creditor. Its power to levy the tax then existed. The obligation to respond to the exercise of the power, although at that time an inchoate obligation, was as binding as any other valid debt of the corporation, and the law imputes knowledge to all participants. In fact, as disclosed by the pleadings, Congress had already at the time of the dissolution proceeded so far towards the final passage of the act that on July 3, 1917, the House Bill was reported to the Senate with the finance committee amendments, changing but little the higher income and excess profit tax rates contained in the bill as passed by the House, and the bill with amendments was printed in July in the Congressional Record, vol. 55, in part 5, pages 4632 to 4637.

In addition to these considerations, I am persuaded that the regulation itself ex proprio vigore compels the court to entertain this suit against the stockholders. Congress does not provide in the Act of October 3, 1917, how this tax as to dissolved corporations shall be collected. It does empower the Commissioner, with the approval of the Secretary of the Treasury, to provide a method by regulation. Regulations have been duly promulgated to the effect that reservation of funds to pay the tax must be made on dissolution of the corporation, and, failing that, the tax may be collected by suit

against the stockholders. This regulation must be given the force and effect of law, because it is in all respects reasonably adapted to the enforcement of the act of Congress and is not in conflict with any statutory provision of law. Maryland Cas. Co. v. United States, 251 U. S. 342, 40 Sup. Ct. 155, 64 L. Ed. 297.

The principles announced by the Supreme Court in U. S. v. Chamberlin, 219 U. S. 250, 31 Sup. Ct. 155, 55 L. Ed. 204, are also applicable here when it is postulated that the Act of October 3, 1917, is applicable to this corporation. The Supreme Court in that case said that by the internal revenue laws the United States are not prohibited from adopting any remedies for the recovery of a debt due to them which are known to the laws of the state. It is said that such was the rule as to the British crown, and the rule respecting the British crown is applicable to this government, and it has been applied frequently in the different states, and practically in the federal courts. It is said to be settled that so much of the royal prerogatives as apply to the king in his capacity of parens patriæ, or universal trustee, enters as much into our political state as it does into the principles of the British Constitution. See, also, U. S. v. N., C. & St. L. Ry. Co., 249 Fed. 678, 161 C. C. A. 588. An ordinary contract creditor, whose debt existed before the dissolution, could have pursued the assets of the corporation into the hands of the stockholders, and a fortiori the government may do so.

[4] There remains the question whether the right of the government was lost by lapse of time when this action was commenced on the 24th day of April, 1924. An accurate and concise digest of the various limitation provisions applicable to income and profit taxes under the Revenue Acts from 1916 to 1921, inclusive, is found on pages 1029 to 1034, Holmes' Federal Taxes 1923. Study of the provisions there digested shows that the statute of limitations governing in this case is section 250 (d) of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛tt), as follows:

"Sec. 250 (d) The amount of income, excess-profits, or war-profits taxes due under any return made under this act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this act for prior taxable years or under prior income, excess-profits, or war-profits tax acts, or under section 38 of the act * * * approved August 5, 1909, shall be determined and assessed within five years after the return was filed, * * *; and no suit or proceeding for the collection of any such taxes due under this act or under prior income, excess-profits, or war-profits tax acts, or of any taxes due under section 38 of such act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed. * * *"

The salient feature of the statute of limitations incorporated in this section 250(d) is that it can be set in motion and started to run only by the affirmative, honest act of the taxpayer, and not otherwise. Prior statutes had either omitted limitations provisions altogether or had allowed mere lapse of time or official delay to destroy the government's right, or had fixed the limitations starting point at the time of a discovery by the Commissioner. But such policies are entirely abandoned in this act, and "nullum tempus occurrit regi" as to any tax imposed by any of the laws specified from 1909 to 1921, unless and until the taxpayer honestly makes and files his return under that law. Then and not until then time runs in his favor, to the complete extinction of his liability at the end of five years in the case of the October 3, 1917, act. If the taxpayer fails or refuses to make such a return as the law contemplates, or willfully makes a false and fraudulent one, proceedings will lie against him to recover the tax at any time.

After dissolution of this corporation, its former secretary sent back to the collector of revenue the blank form provided for making the return for the tax under the law of October 3, 1917, and declared that the corporation was not in existence, and had no officers, directors, or stockholders, and that there was no money or property of the corporation in existence, and said that he was advised that the regulation, meaning the one requiring return for the tax of October 3, 1917, was erroneous. It is contended that the corporation should be deemed to have made return and to have taken sufficient affirmative action to start the statute in its favor because its returns under the 1916 act and the Act of March 3, 1917, being honestly made and filed in July and September, 1917, fairly disclosed its gains and profits for the period covered by the Act of October 3, 1917. The argument is that the corporation, having in this way honestly given the Commissioner the basis

to compute the tax under the October 3, 1917, law, and then, having frankly and fully disclosed all the facts as to the dissolution and distribution of the assets, and having made clear its claim of no liability, the government's right to the tax, if any it ever had, should be deemed barred; if not in five years after August, 1917, when the returns were made and filed by the corporation, at least five years after the Commissioner was directly and fully informed of all the facts. Full information having been brought to the tax officials, it is claimed the statute started to run.

[5] Probably limitations statutes would begin to run in an ordinary creditor's suit against stockholders to subject assets received by them from their corporation as soon as there is disclosure of all the facts, and denial of liability. But neither general statutes of limitations nor general doctrines of laches apply to the government. As to it the general law is that no lapse of time bars the enforcement of its right. The government's right, therefore, continued, and has not been lost unless the statute (section 250[d]) expressly bars it.

The statute does expressly bar any suit to recover an income or excess profit tax begun more than five years after return was filed under the particular act which lays the tax. The phraseology of section 250(d), which treats of "a return made under an act" and "a tax due under a return made under an act," seems cumbersome on first reading; but the purpose is not really ambiguous. These phrases are adapted from the actual working out and daily administration of the income tax laws; they are exactly descriptive and applicable to the actual situation before the Revenue Department, as known to Congress. Under each income tax law there are regulations promulgated to carry out that law, and then blank forms of return are prepared to meet the requirements of each particular law. These blank forms are submitted to the taxpayer, to be filled out and verified by him, and when he has filled out the blank, added the verification, and delivered the document to the proper officer, then the taxpayer is said to have made and filed return under the designated law. And the plain meaning of Congress in section 250(d) is that such a making and filing of return under any one of the revenue acts will start the statute in favor of the taxpayer and against the government. There is nothing in the statute to imply that anything other than such making

of return under the particular act would set the statute in motion.

[6] Certainly nothing was done by this corporation in the case at bar that presents any equivalent of the action prescribed by Congress necessary to start the statute, namely, the making of a return under the Act of October 3, 1917. The fact that return was made under the Act of September 8, 1916, is of no avail to defendants. Neither is the fact that return was made under the Act of March 3, 1917. The making and filing of a return under a particular act being the starting point of the statute, it is of far-reaching importance that no ambiguity be injected into a situation that stands clear and certain on the face of the law. Determination and assessment of the tax has to be made under a particular law. In the regular and ordinary course, such determination and assessment is upon the basis afforded by the return of the taxpayer under that law. No time bars such determination and assessment of a tax under a particular law until the return is made and filed under that particular law.

In the case at bar it is very clear that the officers of the corporation were advised that there was no liability upon either the corporation or its stockholders under the act of 1917, and, being so advised, they failed and refused to make a return such as the statutes and the regulations require, and, having so failed and refused, the statute did not run in favor of the corporation or of the present defendants.

Cases might arise where there would be controvertible questions whether certain acts of a taxpayer should be construed to be "making a return," so as to start the running of the limitations; but in this case the deliberate intention is shown on the part of the corporation and its officers to disavow any obligation under the law either to pay the tax or to comply with the regulations as to making returns. Their position has been consistent that they were not required either to make returns or to pay any tax. Such being their attitude, they avoided the only thing which could start the statute, viz. the making and filing of a return. Accordingly the time that has passed since the enactment of the law of October 3, 1917, has in no wise affected the government's right to recover the tax.

The matter of penalties for failure to make return is closely related to the question here involved. If this corporation had not dissolved, but had continued in profitable business, its next fiscal year would

have ended May 31, 1918. Under the Revenue Act of 1918, the taxes imposed by the Act of October 3, 1917, were entirely superseded by the new taxes for 1918, so that the corporation would have had to pay under the 1918 act (Comp. St. Ann. Supp. 1919, § 6336⅛nn et seq.), and not under the October 3, 1917, act, for that period of its fiscal year between January 1, 1918, and May 31, 1918. Many corporations so circumstanced made their returns during 1918 in conformity with the Act of October 3, 1917, but did not make the return required under the 1918 act. The question arose as to when penalties would accrue against them for failing to make returns for the tax for the first part of their fiscal year 1918. The matter is discussed in the opinion of the Advisory Tax Board (A. T. B. R. 31) C. B. 1-247.

"The opinion of the Advisory Tax Board is requested as to whether the additional taxes shall be assessed and specific penalties asserted in the case of corporate taxpayers, which, prior to the passage of the Revenue Act of 1918, filed tax returns for fiscal years ending during that year, but are delinquent in filing supplemental returns required by the Revenue Act of 1918. The general extension of the time to June 15, 1919, for completing corporate returns is understood to apply to corporations making returns on the basis of fiscal years ending in 1918, as well as to corporations making returns on the basis of the calendar year 1918. It is suggested, doubtless because such fiscal year corporations have already filed returns for the fiscal year 1918 in accordance with the provisions of prior laws that corporations which are delinquent in filing supplemental returns for such fiscal years ending in 1918 should not be subject to additional taxes or penalties by reason of such delinquencies.

"The filing of supplemental returns by corporations having fiscal years ending in 1918 is essential to the proper administration of the Revenue Act of 1918, and all reasonable measures should be taken to compel such filing. A corporation which has duly filed its return for such a fiscal year, as required by previous laws, may be entitled to some consideration on this account and may have some reason for the belief that it has performed its full duty. On the other hand, such a corporation is bound to know at its peril of its duty to file such supplemental return. The extension to June 15, 1919, of the time for filing gives ample opportunity to a corporation to prepare its supplemental return, especially since many of the items included therein will be identical with items included in the return previously filed. The filing of a return for a fiscal year ending in 1918, as required by previous laws, is not therefore in and of itself a 'reasonable cause' within the meaning of the statute (see Revised Statutes, § 3176, as amended by section 1317 of the Revenue Act of 1918) for failure to file the supplemental return. It seems, therefore, that from the standpoint of the government it is necessary as well as legal, and from the standpoint of the taxpayer it is not unfair, to assess additional taxes and assert penalties against corporate taxpayers which are delinquent with respect to such supplemental returns."

This ruling has been consistently adhered to by the department as a settled rule in the orderly administration of the law and in the last Internal Revenue Bulletin, vol. III, August 4, 1924, No. 31, page 10, there appears the following opinion:

"Reference is made to memorandum submitted asking for advice as to the correct method of computing the 25 per cent. penalty on account of failure of the M. Company to file a return on Form 1120 for the fiscal year ended February 28, 1918, within the time prescribed by law. It appears that the corporation filed timely corporation income tax return, Form 1031, and corporation excess-profits tax return, Form 1103, for the fiscal year ended February 28, 1918, in accordance with the provisions of the Revenue Act of 1916, as amended, and the act of 1917, which returns disclosed a tax liability of $5x, which was assessed. Subsequently the corporation filed a delinquent corporation income and profits tax return, Form 1120, in accordance with the Revenue Act of 1918, for the fiscal year in question, which last-mentioned return, Form 1120, disclosed a total tax liability for the fiscal year of $6x, upon which total tax liability a penalty of $2x, was assessed.

"The Revenue Act of 1918 imposes a tax upon the entire net income received by a taxpayer during the entire period of any fiscal year ended in the calendar year 1918. Section 205 of said act specifically so states, and makes provisions that any amount theretofore or thereafter paid on account of the tax imposed for such fiscal year by title I of the Revenue Act of 1916, as amended by the Revenue Act of 1917 and title I of the Revenue Act of 1917, shall be credited toward the payment of the tax imposed for the same period by the Revenue Act of 1918. It necessarily follows that the tax previous-

ly imposed under the Revenue Acts of 1916 and 1917 for any fiscal year beginning in 1917 and ending in 1918, or for any part of such year, is superseded by the tax imposed under the Revenue Act of 1918, and that any return for a fiscal year beginning in 1917 and ending in 1918, filed after the passage of the Revenue Act of 1918, must be considered as an original return made under that act.

"The penalty for failing to file a timely return under the Revenue Act of 1918 as fixed by section 3176, Revised Statutes, as amended by the Revenue Act of 1918, is 25 per cent. of *the tax,* which could mean nothing other than the amount of the tax under the 1918 act. It is therefore concluded that, if a taxpayer filed a timely return under the acts of 1916 and 1917 for a fiscal year ended in 1918, and later, after the passage of the Revenue Act of 1918, filed a delinquent return under the 1918 act for the same fiscal year, and there was no reasonable cause for the delinquency, there should be assessed 25 per cent. of the total tax under the Revenue Act of 1918. In other words, in the case of the M. Company, the 25 per cent. delinquency penalty attaches to the total tax under the Revenue Act of 1918. Of course, any amount heretofore or hereafter paid as a result of the timely returns under the acts of 1916 and 1917 filed for the fiscal year ended in 1918 prior to the passage of the Revenue Act of 1918 must be credited toward the payments of the tax imposed for such fiscal year by the Revenue Act of 1918."

In Beam v. Hamilton, 289 Fed. 9, the Circuit Court of Appeals in the Sixth Circuit upheld the imposition of a 50 per cent. penalty against a taxpayer under this same Act of October 3, 1917. He had filed an income tax return but failed to fill out the necessary blanks to show his liability for excess profit taxes imposed by the Act of October 3, 1917. The court on analysis of the Act of October 3, 1917, and prior acts, shows that there were carried into the law of October 3, 1917, necessary provisions requiring returns to be made, and authorizing regulations therefor to be promulgated, as well as fixing penalty for failure to comply. The facts that the taxpayer did make and file certain returns required did not save him from the penalty assessed against him for failure to make other specific and particular returns under particular and specific provisions of the law and regulations.

Whether it is a question of penalties against the taxpayer or limitations in his favor, the question is to be determined as to a particular law under which the return is made or refused. As stated by the Advisory Tax Board in its opinion, the orderly administration of the Revenue Law requires that the time be certainly fixed when penalties accrue for failure to make returns, and when the statute starts running because of good faith returns duly made. Such certainty would be impossible if acts that were not so intended could be construed into "making return," or if anything short of what the statute clearly intends should be taken as a substitute, either to avoid penalty or to start the statute running. If liability to pay a particular tax is denied, the making and filing of a return under that particular law, which assumes to lay the tax, is the only means open to the protestant to start the statute in his favor.

I find that the Act of October 3, 1917, supplemented by the proper regulations, required and obliged the corporation herein to make true and accurate returns on the particular form provided, namely, Form 1031, and under oath, so that the Commissioner could proceed to determine and assess the tax. Compliance was necessary before any question of limitations could arise. No such return having been made or filed, the statute was never set in motion.

Such being the conclusion of the court, it will be ordered that plaintiff have decree against the defendants as prayed.