**BEAM v. HAMILTON, Collector of Internal Revenue.**

(Circuit Court of Appeals, Sixth Circuit. May 15, 1923.)

No. 3787.

1. **Appeal and error ⊚�незнач1008(2)—Judgment on trial to court conclusive as to matters of fact involved.**

Where a jury is waived, the judgment, in the absence of exception to the admission of evidence, is conclusive on all matters of fact involved therein.

2. **Appeal and error ⊚⟶850(2)—Matters concluded by judgment in trial by court.**

In an action to recover a penalty of 50 per cent. imposed by the Commissioner of Internal Revenue under Rev. St. § 3176, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5899), and paid under protest, where a jury is waived, a judgment dismissing the action in-

volves a finding of fact that plaintiff failed to make and file a return within the time prescribed by the statute.

3. **Internal revenue ☞7—Failure to make separate return under excess profits tax statute held to subject taxpayer to penalty.**

Under the excess profits tax provisions of Act Oct. 3, 1917 (Comp. St. 1918, § 6336⅜a et seq.), and the regulations made thereunder, which require a separate return of income from a trade or business with invested capital, failure to make such a return subjects the taxpayer to the penalty prescribed by Rev. St. § 3176, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 5899), though he makes an income tax return, but without showing that he was engaged in any trade or business with invested capital.

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action at law by James B. Beam against Elwood Hamilton, Collector of Internal Revenue. From the judgment, plaintiff brings error. Affirmed.

W. H. Fulton, of Bardstown, Ky. (A. B. Bensinger, of Louisville, Ky., and E. N. Fulton, and John A. Fulton, both of Bardstown, Ky., on the brief), for plaintiff in error.

S. Duffield Mitchell, Sp. Atty. for Bureau of Internal Revenue, of Washington, D. C. (W. Sherman Ball, U. S. Atty., of Louisville, Ky., and Carl A. Mapes, Solicitor of Internal Revenue, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. This writ brings up for review a judgment rendered in favor of the collector in a suit by plaintiff in error to recover a penalty of 50 per cent. assessed (and paid under protest) for alleged failure to make a return under the Revenue Act of October 3, 1917 (40 Stat. 300 [Comp. St. 1918, § 6336⅜a et seq.]). During that calendar year (and for many years before) plaintiff in error was the vice president and general manager of a distillery, for which service he received an annual salary of $4,200. On his shares of stock therein he drew dividends of $18,000. He was also on his own account (and for several years preceding had been) engaged in the business of registered distiller and wholesale and retail liquor dealer, and as such distiller owned and operated that individual business. He made an income tax return showing the salary and dividends referred to and several thousand dollars of other income (not connected with his personal distillery and liquor business), showing a net taxable income of $27,472.78, on which a tax of $1,360.74 was computed and paid. No return whatever was made of his income from his personal business as distiller, etc., from which he received during 1917 an income of $51,994.70. A return thereof would have made plaintiff liable to an additional income tax of $4,333.18 (a total of $5,693.92, instead of $1,360.74), and to an excess profits tax of $21,155.47. On discovering this situation, the Commissioner made a new assessment of taxes on the correct basis, adding to the taxes assessed a penalty of 100 per

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cent. ($5,693.92) for making a false and fraudulent return, and a penalty of 50 per cent. upon the excess profits taxes for failure to make and file an excess profits return. The entire of the additional taxes and penalties so assessed was paid under protest.

In this suit to recover both items of penalties paid, the District Court (which tried the case on statutory waiver of jury, under Rev. St. § 649, U. S. Comp. Stat. § 1587) concluded that the return actually made was not false and fraudulent; it appearing to have been prepared by an expert accountant, plaintiff in error claiming he had given the accountant full ·data for the return, and that he had executed the same without "looking at it or noting the amount thereof." The court held, however, that plaintiff was not entitled to recover the 50 per cent. penalty assessed and paid for failure to make an excess profits return. The government has not asked review of the judgment regarding the 100 per cent. penalty. Plaintiff in error does not complain of the reassessed taxes paid. The only question here relates to the 50 per cent. penalty.

Rev. St. § 649 (U. S. Comp. Stat. § 1587), provides that "the finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury." Rev. St. § 700 (U. S. Comp. Stat. § 1668), provides for a review of the rulings of a court in the progress of a trial, if excepted to at the time and presented by bill of exceptions, and that "when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment." The record does not show that any request for special findings was made, nor that any finding was made, except that in the judgment entry the court "found the fact to be that the said return, upon which said penalty was based, imposed, and collected as stated in the pleadings, was not willfully 'false' nor 'fraudulent,' nor was it willfully made with intent to defeat or evade assessment of a tax." The return referred to is obviously the income tax return actually made, on which the tax of $1,360.74 was computed and paid.

[1, 2] The statute under which the penalty in question was assessed (Rev. St. § 3176, as amended September 8, 1916 [39 Stat. p. 773, U. S. Comp. Stat. 1918, U. S. Comp. St. Ann. Supp. 1919, § 5899]), provides that "in case of *any* [1] failure to make and file a return or list within the time prescribed by law or by the collector, the Commissioner of Internal Revenue shall add to the tax fifty per centum of its amount," subject to an exception hereinafter referred to. A fraudulent failure to file return is not necessary to the imposition of that penalty; concededly, mere failure is enough. With reference to that item, the judgment entry is merely "in respect to the remainder of the amount sought to be recovered by the plaintiff, viz. the further sum of $11,015.21, and interest thereon, the court is of opinion and now adjudges that plaintiff's action should be and it is dismissed." This adjudication has the force of a general verdict of a jury, and (in the absence of exception to the admission of evidence) is conclusive upon all matters of fact involved therein. See Lehnen v. Dickson, 148 U. S. 71,

[1] All italics in this opinion ours.

13 Sup. Ct. 481, 37 L. Ed. 373; Vicksburg, etc., Ry. Co. v. Anderson, etc., Co., 256 U. S. 408, 415, 41 Sup. Ct. 524, 65 L. Ed. 1020; National Surety Co. v. C., N. O. & T. P. Ry. Co. (C. C. A. 6) 145 Fed. 34, 76 C. C. A. 19; Mason v. Smith (C. C. A. 6) 191 Fed. 502, 503, 112 C. C. A. 146. Our statement of facts, supra, is supported by admissions in pleadings or otherwise.

The exception in the 50 per cent. penalty provision before referred to is that, "when a return is voluntarily and without notice from the collector filed after such time, and it is shown that the failure to file was due to a reasonable cause, and not to willful neglect, no such addition shall be made to the tax." On this record plaintiff is not entitled to the benefit of this exception. The fact of voluntary return without notice from the collector is not found, the allegation thereof in plaintiff's petition is denied by the answer, and there is direct evidence to the contrary. Two witnesses testified, without dispute, that plaintiff refused, under advice of his accountant, to sign the excess profits tax return prepared by the revenue officers. Presumably the extent of plaintiff's actual claim in respect to voluntary return of the excess profits tax is that his act in furnishing the revenue officers with the details of his income from his personal business, which was incorporated into the proposed return and upon which the excess profits tax was assessed, amounted to a making of such return by him.

[3] The sole substantial question presented is whether the penalty provision involved extends to a failure to make a return of excess profits, or whether it is limited to failure to make *any* income tax return. In our opinion the 50 per cent. penalty applied to the failure to make an excess profits tax return. The excess profits feature had its genesis in the United States in the Act of March 3, 1917, which applied only to corporations and partnerships. The Act of October 3, 1917, with which we are concerned, applied to individuals as well, and superseded the Act of March 3, 1917, so covering the entire of the year 1917. Holmes, Federal Taxes (1923 Ed.) p. 1213. In the Act of October 3, 1917, a distinction between ordinary income taxes and excess profits taxes was clearly recognized; separate and distinct provisions being made for return of the two classes of taxes. The act was divided into 13 titles; title I relating to war income taxes, title II to war excess profits taxes, titles III to IX, inclusive, and title XI relating respectively to taxes on beverages, tobacco and manufactures thereof, public utilities and insurance, excise, admissions and dues, stamp taxes, estate tax, and postal rates. Title X contained administrative provisions, title XII income tax amendments, and title XIII general provisions. Section 201, which is part of title II, imposed the excess profits taxes in question. Section 212, also part of title II, expressly made applicable thereto all provisions of title I of the Act of September 8, 1916, as amended by the revenue act here in question, relating to returns and payment of the tax therein imposed, *including penalties*," thus incorporating into title II of the Act of October 3, 1917, the requirement of section 8 of title I of the 1916 act, which requires a "true and accurate return under oath" to be made "in such form as the Commissioner of Internal Revenue, with the approval of

the Secretary of the Treasury, shall prescribe"; while section 213 (also part of title II) authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make regulations for carrying out the provisions of that title, and to require corporations, partnerships, or individuals subject to the provisions thereof "to furnish him with such facts, data and information as in his judgment are necessary to collect the taxes imposed by *this title*," viz. the excess profits taxes. In 1917 the Commissioner provided two separate forms for individual tax returns, No. 1040, entitled "Individual Income Tax Return for Calendar Year 1917," and No. 1101, entitled "Individual Excess Profits Tax *Return* for Calendar Year 1917." Heading A on Form 1040 contained blanks for details regarding "income from salaries, wages," etc. The first paragraph of instruction No. 7 (form 1040), entitled "Excess Profits Taxes," directed that:

"If your net income reported under A * * * exceeded $6,000, you are subject to an excess profits tax at the rate of 8 per cent. on the amount by which the net total under A exceeds $6,000."

Heading B on Form 1040 relates to "income from business (including farming)." The second paragraph of instruction No. 7 on that form reads:

"If your total income from all sources exceeded $6,000, *and you received any income from a trade or business with invested capital,* you should get a copy of the excess profits tax return (Form 1101) and calculate the amount of your tax, if any, as directed therein."

On Form 1101 instruction 2 reads:

"Every individual *employing invested capital* in his trade or business, and having a net income for 1917 of $6,000 or more, *must make a return on this form.*"

And instruction No. 4 on Form 1101 gives the information that net income subject to excess profits taxes falls into two classes; that the first comprises all net income derived from trade or business (including occupations and professions) having no invested capital or not more than a nominal capital, and includes incomes reported in Schedule A, Form 1040; that the tax on *such income* should be computed and entered on Form 1040 according to the instructions thereon; but that all other income subject to tax (with reference to instruction No. 3 above, which in terms relates to excess profits taxes) should be entered on Form 1101, and the tax computed as directed in the instructions on that form. This Form 1101 contained four schedules, designated respectively as "Net Income Subject to Tax," "Adjusted Capital," "Deduction," and "Computation of Tax"; each heading containing express reference to excess profits tax regulations. This Form 1101 was required to be sworn to as "a true and *complete return* * * * pursuant to the Excess Profits Tax Regulations."

We think the two returns, thus so clearly distinguished, in connection with the requirement of separate return on Form 1101, do not lose their separability or distinct identities from the fact that the amount of the excess profits tax is to be carried onto Form 1040, under headings 34 and 35, designated respectively as "excess profits tax at rate of

8 per cent. (see instruction No. 7, page 1)" and "excess profits tax on income from business with invested capital, as computed on *excess profits tax return, Form 1101,*" nor from the fact that the excess profits tax is to be deducted, in line L of Form 1040, from the taxable income otherwise shown thereby.

As plaintiff's income from salaries, wages, etc., under subdivision A, Form 1040, did not amount to $6,000, he was not subject to excess profits taxes thereon. The blanks under B, however, relating to income from business having invested capital, were left unfilled (as was the blank in line "L," relating to deduction of excess profits taxes), and so Form 1040 failed to show any income subject to excess profits tax. In view of the considerations we have pointed out, we are unable to agree with plaintiff's contention that, because Schedule B was so left blank, and plaintiff thereby (impliedly only) made a return that he was not engaged in a business with invested capital, and that he did not owe any excess profits tax, he thereby made a return within the meaning of the excess profits title, although the return so impliedly made on Form 1040 was untrue; nor with the further contention that, unless the return actually made was willfully false or fraudulent, as the court below found it was not, plaintiff cannot be subject to the penalty for failure to make another return, as to which the liability is not conditioned upon fraudulent action. Not only was the excess profits tax a separate, distinct, and then novel source of revenue, but the statute and regulations, as we have above shown, in express and formal terms required separate and distinct returns thereof, and we think it clear that failure to make a separate return of excess profits tax is none the less a failure to make the return contemplated by the statute because of the mere fact that the computations on the excess profits return are to be carried onto Form 1040; the use of that form also is necessary to a complete report. By section 213 the Commissioner was undoubtedly given authority, with the approval of the Secretary of the Treasury, to require both returns.

The document, failure to make which the statute penalizes, is not styled a "report"; the statute denominates it as a "return or list"; and Form 1101 is plainly such "return or list." The statute penalizes "*any* failure to file a return or list," etc. Nor is there any inconsistency between the court's finding of lack of "willfully false or fraudulent" action as applied to the return made on Form 1040, and the conclusion of liability for failure to make an excess profits return. While we must assume, in view of the judgment, that plaintiff thought he had acquainted the expert with his ownership of a separate distillery business, and so did not act fraudulently, the accountant testified on the trial that plaintiff "never informed" him that he (plaintiff) "was in business as a distiller on his own account." In so far as the conclusion of fact so testified to was essential to the judgment rendered, the trial court is presumed to have believed the testimony. We think the Commissioner justified in holding that, while the accountant was responsible for the correctness of the figures, plaintiff was responsible for the source of the same and sufficient details to insure a complete

understanding of the business, and that failure to take such precaution to "discover the omission of the principal item of income" does not "constitute reasonable cause for failure to file an excess profits tax return, which was also due to the omission of the income in question from [plaintiff's] income tax return." The penalty, while drastic, was intended to insure payment of public revenue. No question of its reasonableness is involved.

The judgment of the District Court is affirmed.