Morris County Crushed Stone Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Concrete Supply Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

North Jersey Amiesite Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 8298, 8299, 8300.    Promulgated April 13, 1927.

Single consolidated income and profits-tax returns, Forms 1031 and 1103, filed for the calendar year 1917 by a corporation claiming to be affiliated with certain other corporations among which were the petitioners, which returns were signed and sworn to by the president and the secretary and treasurer of the alleged parent corporation, who were also similar officers of the alleged subsidiary corporations, and in which returns the consolidated income and invested capital of the several corporations were stated and to the excess-profits-tax return a consolidated balance sheet at the beginning and the end of the year was attached, were not the income and profits-tax returns required to be filed by the petitioners within the meaning of the statute and rulings of the Commissioner made pursuant thereto. The assessment and collection of the deficiencies determined by the Commissioner to be due from petitioners for the calendar year 1917 may therefore be assessed and collected at any time.

*H. A. Mihills, C. P. A.*, for the petitioners.
*Thomas M. Wilkins, Esq.*, for the respondent.

On August 21, 1925, the Commissioner mailed notices of his determination of deficiencies in income and profits tax for the calendar year 1917 of $53.95 as to the Morris County Crushed Stone Co., $84.79 as to the Concrete Supply Co., and $1,697.27 as to the North Jersey Amiesite Co. The amounts had not then nor have they since been assessed.

Petitioners claim that single consolidated income and profits-tax returns prepared on Forms 1031 and 1103 on which appeared the name of the North Jersey Quarry Co., the parent corporation, and the names of several claimed subsidiary corporations, among which were included the petitioners, which forms were signed and sworn to by the president and the secretary and treasurer of the North Jersey Quarry Co., who were similar officers of all of the subsidiary corporations shown, and filed with the collector of internal revenue on March 30, 1918, constituted the filing of a return by each of the petitioners within the meaning of the law and operated to set in motion the statute of limitations prescribing the time within which the Commissioner could make an assessment against them. Petitioners insist, therefore, that, inasmuch as the Commissioner's determination of deficiencies against them was not made until 7 years and 5 months after the consolidated return was filed, no additional tax may now be assessed.

The Commissioner contends that these petitioners did not file income and profits-tax returns for the calendar year 1917 as required by the statute and his instructions pursuant thereto; that the consolidated income and profits-tax returns filed by the parent corporation, although the names of petitioners were stated therein as being affiliated, were the returns only of the alleged parent corporation, the North Jersey Quarry Co., and did not operate to start the running of the statute of limitations as to the assessment and collection of any tax determined by him to be due by the petitioners.

### FINDINGS OF FACT.

Petitioners are New Jersey corporations engaged in the production and sale of crushed stone, sand, gravel, and paving material, with office and place of business at Morristown, N. J. Early in 1918 W. L. Schmidt, president, and I. W. Wortman, secretary and treasurer of eight New Jersey corporations engaged in the crused stone, sand, gravel, and paving-material business, in which number the petitioners were included, prepared separate corporation income-tax returns for the calendar year 1917 for these eight corporations. These two officers carried these returns to the office of the collector of internal revenue at Newark, N. J., for the purpose of going over them with the collector, and for the purpose of discussing the matter

79705°—28——51

of the excess-profits tax. Upon arrival they informed the collector of their desire to discuss the tax liability of these corporations with someone, whereupon a representative of the collector was assigned to discuss the matter with the corporate officers. Schmidt and Wortman, and the collector's representative sat down and discussed the matter of the income and invested capital, and the business and operations of the several companies. Thereupon the collector's representative stated to Schmidt and Wortman that six of the corporations, in which number the petitioners were included, appeared to be affiliated and that a consolidated excess-profits-tax return should be filed; that two of the eight corporations not involved in these proceedings were not affiliated with any of the other corporations and their income and invested capital should not be included in the consolidated return. The two corporations which were believed by the collector's representative not to be affiliated with any of the other corporations filed separate income and excess-profits-tax returns. Thereupon Schmidt and Wortman left the collector's office without filing the separate income-tax returns of the six companies and returned to Morristown, N. J., and proceeded to prepare and execute a consolidated income-tax return, Form 1031, and a consolidated profits-tax return, Form 1103, showing the consolidated net income and invested capital for the calendar year 1917. These consolidated income and profits-tax returns were entitled as follows:

Name of Corporation: North Jersey Quarry Company and Affiliated
Companies.
    B. North Jersey Amiesite Co.
    C. Morris County Crushed Stone Co.
    D. New Jersey Trap Rock Co.
    E. Patterson Crushed Stone Co.
    F. Concrete Supply Co.
Principal Office: 17 South Street, Morristown, N. J.
Kind of Business Carried on: Crushed stone, sand, gravel, and
    paving material.

The consolidated income and profits-tax returns were signed and sworn to by W. L. Schmidt, president, and I. W. Wortman, secretary and treasurer, respectively, of all of the companies.

The nature of the business of all of the companies, which was the same, and the dates of incorporation of each company and the laws of the State under which incorporated were stated in the consolidated returns. The following answers were made to questions on page 4 of the consolidated excess-profits-tax return, Form 1103:

Is the corporation affiliated with one or more other corporations within the meaning of Article 77 of the Excess Profits Tax Regulations? *Yes.*

If so, submit a statement describing all of its intercorporate relationships. *The North Jersey Quarry Company is a holding Company. The North Jersey Amiesite Company, the Morris County Crushed Stone Company, the New Jersey*

*Trap Rock Company, the Patterson Crushed Stone Company, and the Concrete Supply Company are subsidiary and affiliated Companies, using the capital, property, and plants of the North Jersey Quarry Company in their operation. The Companies are all operated practically as one from the same office, and by the same officers. These Companies do an interchange business, and are dependent upon each other for their successful operation.*

Is this return a consolidated return within the meaning of Article 78 of the Excess Profits Tax Regulations? Yes.

Submit a copy, in detail, of (a) The balance sheet of the corporation at the beginning of the taxable year. (b) The balance sheet of the corporation at the close of the taxable year. Attached.

The balance sheet attached was a consolidated balance sheet of the North Jersey Quarry Co. and associated companies at January 1, 1917, and December 31, 1917.

On March 28, 1918, the consolidated income and profits-tax returns were forwarded by mail to the collector of internal revenue with the following letter of that date:

In accordance with instructions received at your office during Mr. Schmidt's and the writer's call a few days ago, we are enclosing herewith a combined report covering the North Jersey Quarry Company, the North Jersey Amiesite Company, the Morris County Crushed Stone Company, the Patterson Crushed Stone Company, the New Jersey Trap Rock Company, and the Concrete Supply Company, all in accordance with Articles 77 and 78 of the Income Tax Regulations. These Companies are all affiliated and operated from this office. The North Jersey Quarry Company is the holding Company. The North Jersey Quarry Company, together with Mr. Schmidt, who is President of all the Companies, and the writer, who is Secretary and Treasurer of all the Companies, represent practically the entire capital as well as the entire management of these Companies.

Yours very truly,

NORTH JERSEY QUARRY COMPANY,
I. W. WORTMAN, *Secretary.*

These consolidated income and profits-tax returns showing a consolidated net income of $20,919.81 and an income tax due of $770.06, and no excess-profits tax due, were received and filed by the collector of internal revenue at Newark, N. J., on March 30, 1918. The tax shown to be due was assessed and paid in due course. None of the alleged affiliated corporations, among which the petitioners were listed on the consolidated returns, filed a separate return of its income or invested capital.

On January 15, 1923, the North Jersey Quarry Co., Patterson Crushed Stone Co., Morris County Crushed Stone Co., Concrete Supply Co., North Jersey Amiesite Co., and the New Jersey Trap Rock Co. received from the Commissioner separate letters, addressed to 17 South Street, Morristown, N. J., reading as follows:

The Revenue Act of 1921 provides that assessment of additional income and profits taxes for the taxable year 1917 must be made within five years after the date when such return was filed.

The Commissioner of Internal Revenue is reluctant to proceed to impose assessments based upon a superficial determination of the true tax liability and in his judgment, both for the interests of the Government and the taxpayer, assessments should be made only after a thorough audit and careful consideration of all the facts in the case.

However in view of the limitation of time to permit the completion of this program it is requested that you execute and return to this office the enclosed form of waiver.

With each of these letters there was enclosed a printed form of waiver of the statute of limitations as follows:

In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, ———————— of ——— and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said ——————— for the years ——— under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled "An Act to provide Revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, irrespective of any period of limitation.

None of the corporations mentioned executed a waiver.

Prior to March 7, 1923, the Commissioner's field agent made an investigation and audit of the books and records of the corporations included in the consolidated returns for the calendar year 1917 and prepared a report of the tax liability of these companies upon a consolidated basis. On March 7, 1923, the internal revenue agent in charge transmitted a copy of this report to the office of the companies at Morristown, N. J.

In March, 1923, the Commissioner made a jeopardy assessment of an additional tax of $5,794.83 against the North Jersey Quarry Co. for the calendar year 1917 and on March 15, 1923, mailed this corporation a registered letter as follows:

An examination of your income tax return for the year 1917, together with the information heretofore submitted, has been made and the results thereof are outlined in the attached statement.

You are advised that in order that the collection of this tax may not be jeopardized by the delay incident to the giving of the usual thirty days notice, as provided for in Section 250 (d) of the Revenue Act of 1921, an immediate assessment by the Commissioner of Internal Revenue will be made.

The Bureau will, however, entertain a claim in abatement if an appeal is filed within thirty days of the receipt of this letter. The appeal attached to the claim should be filed with the Collector of your district and be under oath setting forth in full all information upon which you base your protest and should be addressed to the Commissioner of Internal Revenue for the specific attention of IT:NR:G–MPS. On request a conference will be arranged prior to final decision.

If appeal is not filed, payment should be made upon receipt of notice and demand from the Collector of Internal Revenue for your district.

To this letter was attached a statement as follows:

SCHEDULE 1

INCOME ADJUSTMENTS

| | |
|---|---|
| Net income as reported on original return | $20,919.81 |
| As corrected | 24,971.49 |
| Increase as explained below | 4,051.68 |

Depletion disallowed, $4,051.68. Owing to the fact that this deduction has not been fully substantiated it has been disallowed pending the receipt of further information.

SCHEDULE 2

In the absence of complete data relative to your invested capital, the excess profits tax for the year has been computed as follows:

| | |
|---|---|
| Net taxable income for the year as computed | $24,971.49 |
| Less: Dividends received | 12,128.00 |
| Amount subject to excess profits tax | 12,843.49 |
| Less: Exemption provided by law | 3,000.00 |
| Amount taxable at 60% | 9,843.47 |
| Excess profits tax | 5,906.08 |

SCHEDULE 3

COMPUTATION OF INCOME AND TOTAL TAX

| | |
|---|---|
| Net income as corrected | $24,971.49 |
| Less: Excess profits tax | 5,906.08 |
| Taxable at 2% | 19,065.41 |
| Less: Dividends | 12,128.00 |
| Taxable at 4% | 6,937.41 |
| Excess profits tax | 5,906.08 |
| Tax at 2% | 381.31 |
| Tax at 4% | 277.50 |
| Total tax | 6,564.89 |
| Previously assessed | 770.06 |
| Additional tax due | 5,794.83 |

This additional tax which was assessed against the North Jersey Quarry Co. was subsequently abated.

On August 21, 1925, the Commissioner mailed to each of the petitioners notices of his final determination of deficiencies as hereinbefore indicated, as follows:

The determination of your income tax liability for the year 1917 on the basis of a revised affiliation ruling for that year, and an examination of your books and other data on hand in this office results in a deficiency in tax amounting to $1,697.27. [This was the amount determined in the case of the North Jersey Amiesite Co.]

Details of the adjustments resulting in the above tax liability are shown in schedules accompanying a separate communication from this bureau to the North Jersey Quarry Company.

These notices advised the petitioners of their right to file an appeal with this Board. In a statement attached to each of the notices mailed to each of the petitioners, the Commisisoner stated " No return filed. The tax is assessable under Section 277 (a) of the Revenue Act of 1924." The deficiencies determined by the Commissioner against these petitioners has not been assessed. Within 60 days after the mailing by the Commissioner of the notices of his determination each of the petitioners filed petitions with the Board in which the only claim made is that the deficiencies were barred by the statute of limitations prior to the Commissioner's determination.

OPINION.

LITTLETON : The petitioners claim that the consolidated income and excess-profits-tax returns, Forms 1031 and 1103, constituted the return of each of them and that the statute of limitations began to run on the date these consolidated returns were filed on March 30, 1918, and that since the Commissioner has not assessed any additional tax against them and did not make his determinations of the alleged deficiencies until 7 years and 5 months after March 30, 1918, their liability for any additional tax is extinguished by section 1106 of the Revenue Act of 1926.

The Commissioner contends that the petitioners, which claimed to be affiliated as subsidiaries of the North Jersey Quarry Co., in the single consolidated income and excess-profits-tax returns filed on March 30, 1918, did not file either an income-tax return, Form 1031, or an excess-profits-tax return, Form 1103, as required and that the consolidated income-tax return, Form 1031, and the consolidated excess-profits-tax return, Form 1103, did not operate to set in motion the statute of limitations as to the assessment of any tax against the alleged subsidiary corporations, the petitioners in this proceeding.

Section 13 (b) of the Revenue Act of 1916 provides:

*Every corporation,* joint-stock company or association, or insurance company, subject to the tax herein imposed, *shall,* on or before the first day of March, nineteen hundred and seventeen, and the first day of March in each year thereafter, * * * *render a true and accurate return of its annual net income in the manner and form to be prescribed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury,* and containing such facts, data, and information as are appropriate and in the opinion of the commissioner necessary to determine the correctness of the net income returned and to carry out the provisions of this title. The return shall be sworn to by the president, vice president, or other principal officer, and by the treasurer or assistant treasurer. The return shall be made to the collector of the district in which is located the principal office of the corporation, company, or association, where

are kept its books of account and other data from which the return is prepared
* * *. All such returns shall as received be transmitted forthwith by the
collector to the Commissioner of Internal Revenue. (Italics ours.)

Section 206 of Title II—War Excess Profits Tax—of the Revenue
Act of 1917, approved October 3, 1917, provides, so far as is material
here, as follows:

That *for the purposes of this title the net income of a corporation shall be
ascertained and returned* * * * (c) for the taxable year *upon the same
basis and in the same manner as provided in Title I of the Act entitled* "An
Act to increase the revenue, and for other purposes," approved September
eighth, nineteen hundred and sixteen, as amended by this Act, except that the
amounts received by it as dividends upon the stock or from the net earnings
of other corporations, joint-stock companies or associations, or insurance com-
panies, subject to the tax imposed by Title I of such Act of September eighth,
nineteen hundred and sixteen, shall be deducted. (Italics ours.) · ·

Sections 212 and 213 of the Revenue Act of 1917 provide as follows:

SEC. 212. That all administrative, special, and general provisions of law,
including the laws in relation to the assessment, remission, collection, and
refund of internal-revenue taxes not heretofore specifically repealed, and not
inconsistent with the provisions of this title are hereby extended and made
applicable to all the provisions of this title and to the tax herein imposed, and
all provisions of Title I of such Act of September eighth, nineteen hundred and
sixteen, as amended by this Act, relating to returns and payment of the tax
therein imposed, including penalties, are hereby made applicable to the tax
imposed by this title.

SEC. 213. That the Commissioner of Internal Revenue, with the approval of
the Secretary of the Treasury, shall make all necessary regulations for carry-
ing out the provisions of this title, and may require any corporation, partner-
ship, or individual, subject to the provisions of this title, to furnish him with
such facts, data and information as in his judgment are necessary to collect the
tax imposed by this title.

The Commissioner took the position, which is not questioned in this
proceeding, that for the purpose of the excess-profits tax imposed by
Title II of the Revenue Act of 1917, the income and invested capital
of two or more domestic corporations might, under certain circum-
stances, be consolidated, and he gave certain instructions and promul-
gated certain rulings prior to the time for filing of the returns for
1917 in relation to the income-tax return, Form 1031, and the excess-
profits-tax return, Form 1103. In Treasury Decision 2650, promul-
gated February 9, 1918, the Commissioner extended to April 1, 1918,
the time for filing the income-tax return and the excess-profits-tax
return required to be filed between October 16, 1917, and March 1,
1918, because of unavoidable delay in the preparation of forms and
regulations for the war-excess-profits tax. In his Regulations No.
33, promulgated January 2, 1918, Treasury Decision 2690, he pro-
vided in article 203 thereof as follows:

Every corporation not specifically enumerated as exempt shall make a re-
turn of annual net income whether or not it may have for the particular year

any net income, or whether or not it shall be a subsidiary of or controlled by another corporation, and such return, if made on the basis of a calendar year, must be filed with the collector on or before March 1, next following the year for which the return is made; if on the basis of a fiscal year ending with a date other than December 31, it must be filed within 60 days after the close of such fiscal year.

This regulation related only to the return Form 1031 for the purpose of the income tax imposed by the Revenue Act of 1916, as amended by the Revenue Act of 1917. In the income-tax return, Form 1031, prescribed by the Commissioner to be filed by every corporation, the Commissioner set forth on the first page thereof under the heading " General Instructions," among other instructions, the following:

EXCESS PROFITS TAX.—For the purpose of war excess profits tax, every corporation subject to income tax shall be deemed to be engaged in business, and all the trades and businesses in which it is engaged (whether continuously carried on or not) shall be treated as a single trade or business, and all its income from whatever source derived shall be deemed to be received from such trade or business.

*     *     *     *     *     *     *

In the case of a trade or business having more than a nominal invested capital, the excess profits tax is equal to various percentages of the net income, depending on its ratio to the invested capital. *Every corporation having a net income of over $3,000 for the taxable year must make a return of . invested capital and compute the amount of tax on Form 1103.*

*     *     *     *     *     *     *

SUBSIDIARY COMPANIES.—The corporation making this return must attach hereto a list of all its subsidiary companies, if any, with the location of the principal place of business of each. *Each subsidiary company must make a separate and distinct return.* (Italics ours.)

The corporation excess-profits-tax return, Form 1103, prescribed by the Commissioner to be filed for the calendar year 1917 and which was used by the North Jersey Quarry Co., in which it stated the combined income and invested capital as it determined it, contained on the first page thereof under the heading " General Instructions," among other instructions, the following:

WHO MUST MAKE A RETURN ON FORM 1103.—Every corporation having for the taxable year a net income of $3,000 or more (see Form 1031) must make a return on this form of its average invested capital during the taxable year and compute the amount of its excess profits tax, if any, as directed herein.

This return should be made at the same time and in the same manner as the return of net income for the taxable year on Form 1031.

Prior to the filing of the excess-profits-tax returns for the calendar year 1917, the Commissioner provided in article 77 of his Regulations 41 the following:

For the purpose of this regulation two or more corporations will be deemed to be affiliated (1) when one such corporation owns directly or controls through

closely affiliated interests or by a nominee or nominees, all or substantially all of the stock of the other or others, or when substantially all of the stock of two or more corporations is owned by the same individual or partnership, and both or all of such corporations are engaged in the same or a closely related business; or (2) when one such corporation (a) buys from or sells to another products or services at prices above or below the current market, thus effecting an artificial distribution of profits or (b) in any way so arranges its financial relationships with another corporation as to assign to it a disproportionate share of net income or invested capital.

In Treasury Decision 2662, approved March 6, 1918, relating to consolidated returns for the purpose of the excess-profits tax imposed by Title II of the Revenue Act of 1917, the Commissioner provided as follows:

A consolidated return shall be filed by the parent or principal corporation in the office of the collector of the district in which it has its principal office. Each of the other affiliated corporations shall file in the office of the collector of its respective district a return, entering thereon its name and address and replying to the questions in Schedule 1, and to questions 1, 2, 3, 4, and 11 on page 4 of Form 1103; and stating also (1) that the corporation is affiliated with a designated parent or principal corporation, (2) that its return is included in the consolidated return of such parent or principal corporation, and (3) the district in which the consolidated return is filed.

None of the petitioners filed either an income-tax return, Form 1031, as required by the statute and the rulings of the Commissioner, or an excess-profits-tax return, Form 1103, as required by section 206 of Title II of the Revenue Act of 1917 and the instructions and decisions of the Commissioner made under authority of the statute.

The Revenue Act of 1917 did not in express terms provide for the determination of the excess profits tax upon the basis of consolidated returns, and in section 1331 (a) of the Revenue Act of 1921 it was provided:

That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

Section 250 (d) of the Revenue Act of 1921 provides:

The amount of income, excess-profits, or war-profits taxes due under any return made under this Act for the taxable year 1921 or succeeding taxable years shall be determined and assessed by the Commissioner within four years after the return was filed, and the amount of any such taxes due under any return made under this Act for prior taxable years or under prior income, excess-profits, or war-profits tax Acts, or under section 38 of the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax * * * *Provided further,* That in the case of a false or fraudulent return with intent to evade tax, or of a failure

to file a required return, the amount of tax due may be determined, assessed, and collected, and a suit or proceeding for the collection of such amount may be begun, at any time after it becomes due * * *.

The provisions of the Revenue Acts of 1916 and 1917 required every corporation to file an income-tax return and an excess-profits-tax return in the manner and form prescribed by the Commissioner. The Commissioner prescribed two forms, 1031 and 1103, and gave specific instructions concerning the filing thereof, and also instructed corporations claiming to be affiliated what should be done in the matter of filing returns. He instructed that every corporation, whether affiliated or not, should file an income-tax return Form 1031. He instructed that when corporations claimed to be affiliated within the meaning of article 77 of Regulations 41, the parent or principal corporation should file a consolidated excess-profits-tax return, Form 1103, and that each of the other affiliated corporations should file in the office of the collector of its respective district an excess-profits-tax return, Form 1103, giving certain specified information.

The petitioners knew of the Commissioner's instructions concerning the filing of returns and they had in their possession corporation excess-profits-tax return Form 1103 containing positive instructions of the Commissioner that " every corporation * * * must make a return on this form " and " this return should be made at the same time and in the same manner as the return * * * Form 1031."

Whether the income-tax return, Form 1031, and the excess-profits-tax return, Form 1103, which were filed by the North Jersey Quarry Co., alleged parent corporation, were correct and proper returns is not material here. They were not the income and excess-profits-tax returns required to be filed by these petitioners. These petitioners were not relieved of filing separate income and profits-tax returns merely because the alleged parent corporation had filed consolidated returns. The consolidated returns were the returns of the North Jersey Quarry Co., and the fact that the officers of the alleged parent corporation which filed the returns were also officers of the alleged subsidiary corporations would not make those returns the returns of these petitioners required to be filed by the statute and the regulations. In the case of *Beam* v. *Hamilton*, 289 Fed. 9, the Circuit Court of Appeals for the Sixth Circuit had before it the question of whether the lower court had properly held that Beam was liable for a 50 per cent penalty for failure to make an excess-profits-tax return for the year 1917. In considering that question the court discussed the matter of the income and excess-profits-tax returns required to be filed, and in that connection said:

The sole substantial question presented is whether the penalty provision involved extends to a failure to make a return of excess profits, or whether it is limited to failure to make *any* income tax return. In our opinion the 50 per cent. penalty applied to the failure to make an excess profits tax return.

The excess profits feature had its genesis in the United States in the Act of March 3, 1917, which applied only to corporations and partnerships. The Act of October 3, 1917, with which we are concerned, applied to individuals as well, and superseded the Act of March 3, 1917, so covering the entire of the year 1917. Holmes, Federal Taxes (1923 Ed.) p. 1213. In the Act of October 3, 1917, a distinction between ordinary income taxes and excess profits taxes was clearly recognized; separate and distinct provisions being made for return of the two classes of taxes. The act was divided into 13 titles; title I relating to war income taxes, title II to war excess profits taxes, titles III to IX, inclusive, and title XI relating respectively to taxes on beverages, tobacco, and manufactures thereof, public utilities and insurance, excise, admissions and dues, stamp taxes, estate tax, and postal rates. Title X contained administrative provisions, title XII income tax amendments, and title XIII general provisions. Section 201, which is part of title II, imposed the excess profits taxes in question. Section 212, also part of title II, expressly made applicable thereto all provisions of title I of the Act of September 8, 1916, as amended by the revenue act here in question, relating to returns and payment of the tax therein imposed, *including penalties,*" [sic] thus incorporating into title II of the Act of October 3, 1917, the requirement of section 8 of title I of the 1916 act, which requires a " true and accurate return under oath " to be made " in such form as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe "; while section 213 (also part of title II) authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make regulations for carrying out the provisions of that title, and to require corporations, partnerships, or individuals subject to the provisions thereof " to furnish him with such facts, data and information as in his judgment are necessary to collect the taxes imposed by *this title,*" viz. the excess profits taxes. In 1917 the Commissioner provided two separate forms for individual tax returns, No. 1040, entitled " Individual Income Tax Return for Calendar Year 1917," and No. 1101, entitled " Individual Excess Profits Tax *Return* for Calendar Year 1917." Heading A on Form 1040 contained blanks for details regarding " income from salaries, wages," etc. The first paragraph of instruction No. 7 (form 1040), entitled " Excess Profits Taxes," directed that:

" If your net income reported under A * * * exceeded $6,000, you are subject to an excess profits tax at the rate of 8 per cent. on the amount by which the net total under A exceeds $6,000."

Heading B on Form 1040 relates to " income from business (including farming)." The second paragraph of instruction No. 7 on that form reads:

" If your total income from all sources exceeded $6,000, *and you received any income from a trade or business with invested capital,* you should get a copy of the excess profits tax return (Form 1101) and calculate the amount of your tax, if any, as directed therein."

On Form 1101 instruction 2 reads:

" Every individual *employing invested capital* in his trade or business, and having a net income for 1917 of $6,000 or more, *must make a return on this form.*"

And instruction No. 4 on Form 1101 gives the information that net income subject to excess profits taxes falls into two classes; that the first comprises all net income derived from trade or business (including occupations and professions) having no invested capital or not more than a nominal capital, and includes incomes reported in Schedule A, Form 1040; that the tax on *such income* should be computed and entered on Form 1040 according to the instructions thereon; but that all other income subject to tax (with reference to

instruction No. 3 above, which in terms relates to excess profits taxes) should be entered on Form 1101, and the tax computed as directed in the instructions on that form. This Form 1101 contained four schedules, designated respectively as " Net Income Subject to Tax," "Adjusted Capital," " Deduction," and " Computation of Tax "; each heading containing express reference to excess profits tax regulations. This Form 1101 was required to be sworn to as " a true and *complete return* * * * pursuant to the Excess Profits Tax Regulations."

We think the two returns, thus so clearly distinguished, in connection with the requirement of separate return on Form 1101, do not lose their separability or distinct identities from the fact that the amount of the excess profits tax is to be carried onto Form 1040, under headings 34 and 35, designated respectively as " excess profits tax at rate of 8 per cent. (see instruction No. 7, page 1)" and " excess profits tax on income from business with invested capital, as computed on *excess profits tax return, Form 1101*," nor from the fact that the excess profits tax is to be deducted, in line L of Form 1040, from the taxable income otherwise shown thereby.

*        *        *        *        *        *        *

* * * Not only was the excess profits tax a separate, distinct, and then novel source of revenue, but the statute and regulations, as we have above shown, in express and formal terms required separate and distinct returns thereof, and we think it clear that failure to make a separate return of excess profits tax is none the less a failure to make the return contemplated by the statute because of the mere fact that the computations on the excess profits return are to be carried onto Form 1040; the use of that form also is necessary to a complete report. By section 213 the Commissioner was undoubtedly given authority, with the approval of the Secretary of the Treasury, to require both returns.

When we consider that section 240 of the Revenue Act of 1918 provides " That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title [Title II—Income Tax] and Title III [War-Profits and Excess-Profits Tax], and the taxes thereunder shall be computed and determined upon the basis of such return " and that in the Revenue Act of 1921, enacted almost three years later, Congress provided in section 1331 thereof that Title II—War Excess Profits Tax—of the Revenue Act of 1917 should be construed to impose such war-excess-profits tax therein mentioned " upon the basis of consolidated returns," it is evident that it was recognized at all times that each corporation claiming to be affiliated with another corporation should file separate income and excess-profits-tax returns for the year 1917. Neither the law nor the regulations permitted the filing of a consolidated income-tax return, Form 1031, for the year 1917. These petitioners did not comply either with the statute or the Commissioner's instructions relating to the filing of returns for the year 1917.

These proceedings are to be distinguished from the *Appeal of F. A. Hall Co.*, 3 B. T. A. 1172, and the *Appeal of National Tank & Export Co.*, 3 B. T. A. 1217. Those cases concerned the year 1918. The Revenue Act of 1918 in section 240 specifically provided " That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make *a consolidated return* of net income and invested capital for the purposes of this title [Title II— Income Tax] and Title III [War-Profits and Excess-Profits Tax], and the taxes thereunder shall be computed and determined upon the basis of *such return.*" This section required only one return to be filed for the year 1918 for the several affiliated corporations for the purpose of both the income tax and the excess-profits tax, but this was not true as to the year 1917. There is a further difference. The Board found in the *Appeals of F. A. Hall Co.*, and the *National Tank & Export Co.*, *supra*, that notwithstanding the corporations were not in fact affiliated under the Revenue Act of 1918, the consolidated return which had been filed set forth specifically the income and invested capital of each of the alleged affiliated corporations and the Commissioner was put upon notice of the income and invested capital of each corporation so that he could make a proper accounting. The income and invested capital of these petitioners were not so stated.

In view of the statutory provisions and the Commissioner's instructions as to the filing of returns for the year 1917 and the facts and circumstances existing in these proceedings, it is the opinion of the Board that these petitioners filed no income-tax return or excess-profits-tax return for the calendar year 1917 and the Commissioner may therefore assess and collect the tax at any time. The Commissioner's determinations were not otherwise questioned and the deficiencies are therefore approved.

*Judgment will be entered for the respondent.*