NATIONAL LAND AND CONSTRUCTION COMPANY, PETITIONER; *v.* COM-
MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40126.   Promulgated February 19, 1932.

*M. P. Rosenthaler, C. P. A.*, for the petitioner.
*John D. Kiley, Esq.*, for the respondent.

OPINION.

Smith: The respondent contends that since no excess-profits-tax return (Form 1103) was filed by the petitioner, the excess-profits tax may be assessed at any time (section 278 (a) of the Revenue Acts of 1924 and 1926) and that the 25 per cent penalty should also be assessed for failure to file this return (section 3176 of the Revised Statutes). The statement attached to the deficiency notice shows that the respondent also determined a deficiency in the petitioner's income tax for 1917, but concedes that the income-tax deficiency is barred by the statute of limitations. The petitioner contends that the proposed excess-profits-tax assessment (deficiency and penalty) is also barred.

Title II, War Excess Profits Tax, of the Revenue Act of October 3, 1917, imposed the tax in controversy and made applicable thereto all provisions of Title I of the Revenue Act of September 8, 1916, "relating to returns and payment of the [income] tax therein imposed" (section 212), and the Commissioner, with the approval of the Secretary of the Treasury, was directed to "make all necessary regulations for carrying out the provisions of this title" (section 213). Section 14 of the Revenue Act of 1916 provides for the "Assessment and Administration" of the tax imposed under Title I of that act, and in subdivision (a) of this section it appears that "in cases of refusal or neglect to make such return, and in cases of erroneous, false, or fraudulent returns, * * * the Commissioner * * * shall, upon the discovery thereof, at any time within three years after said return is due, make a return upon information" and assess the tax. A strict adherence to the provisions of section 14 (a) of the Revenue Act of 1916, applicable to the excess-profits tax imposed by the Act of October 3, 1917, would apparently require the Commissioner to move within three years of the time "the return was due" with respect to the contested deficiency. However, subsequent revenue acts provide that the "tax due under any return shall be determined and assessed * * * within five years after the return was due or was made" (section 250 (d) of the Revenue Act of 1918), or "the return was filed" (section 250 (d) of the Revenue Act of 1921, section 277 (a) (2) of the Revenue Acts of 1924 and 1926). There is no contention that the income-tax return filed by the petitioner for the taxable year 1917 was false or fraudulent with intent to evade tax. Our question narrows itself down to whether the respondent can assess the excess-profits-tax deficiency and penalty for 1917 "at any time" or is restricted to the three or five-year period after the return on Form 1103 was due, made, or filed.

The petitioner contends that it filed the only return required by the law and regulations for the taxable year 1917. The petitioner's income-tax return makes a *prima facie* showing that it was not required to file an excess-profits-tax return, since its net income was less than $3,000, the amount prescribed by the respondent as being necessary before a domestic corporation was required to make an excess-profits-tax return (article 10 of Regulations 41, and see "General Instructions" on Form 1031 and Form 1103). Had a return on Form 1103 been required from this taxpayer, the excess-profits tax due was to "be assessed and collected at the same time and in the same manner" as its income tax (article 79, Regulations 41). In *Denman* v. *Motter*, 44 Fed. (2d) 648, 649, is the following:

\* \* \* The plaintiffs [taxpayers] made an honest endeavor to comply with the rules and regulations; they made a return that they thought was a full compliance with the law \* \* \*.

As we said in *Peerless Iron Pipe Exchange, Inc.*, 23 B. T. A. 900, 904:

\* \* \* The purpose and function of all income-tax returns, on whatever form, is to furnish such information as will enable the respondent to proceed intelligently in determining the proper amount of tax to be assessed. \* \* \*

This taxpayer substantially complied with the law and regulations and did not file an excess-profits-tax return because of the honest belief that no such return was required. The return filed contained full information regarding petitioner's invested capital, income and expenses, and the notation that no excess-profits tax was computed and claimed as a credit in the computation of petitioner's taxable net income certainly put the respondent upon notice regarding the excess-profits tax for 1917. The respondent's determination of June 12, 1928, more than 10 years after the petitioner filed its return for 1917, is too late. See *Abraham Werbelovsky, Executor*, 8 B. T. A. 442.

In a recent case involving a corporate taxpayer and the year 1917, *United States* v. *Tillinghast*, 55 Fed. (2d) 279, the United States District Court for Rhode Island said:

\* \* \* The return as filed upon Form 1031 discloses income received and items of deduction which had in good faith been claimed \* \* \*. Where a basic return, as here, was required on Form 1031 and a supplemental or accompanying return also provided, with directions for its use and when to be used, it must be the intendment of the law that if the taxpayer's computation, made in good faith, upon the basic return shows a result which in compliance with the directions and regulations leaves nothing to be carried forward upon the supplemental return, he does not lose his right of protection from delayed suit and examination, provided by the statute of limitations. \* \* \*

The instant proceeding is distinguishable from and not controlled by *Beam* v. *Hamilton*, 289 Fed. 9, and *Homer P. Morris*, 9 B. T. A. 1273, involving individuals and the taxable year 1917. In both of those cases the taxpayers filed income-tax returns that were *prima facie* evidence that they were required to file excess-profits-tax returns; whereas, the return filed by the petitioner was *prima facie* evidence that it was not required to file an excess-profits-tax return and that there was a substantial compliance with the law and regulations. See *William F. Stafford*, 14 B. T. A. 1199; *Valentine Clark Co.* v. *Commissioner*, 52 Fed. (2d) 346; *Florsheim Bros. Dry Goods Co.* v. *United States*, 280 U. S. 453. There was no "substantial delinquency" to be penalized. *Dayton Bronze Bearing Co.* v. *Gilligan*, 281 Fed. 709, 714.

This Board and the courts many times have cited with approval our decision in *Mabel Elevator Co.*, 2 B. T. A. 517, 519, wherein we said:

\* \* \* The return filed purported to be made in accordance with the law; it purported to and did include the income of the taxpayer for the period in question. In the absence of any evidence or claim that such return was false or fraudulent with intent to evade tax, it became the duty of the Commissioner to determine, within the time provided by law, whether or not such return was erroneous in any respect.

There can be no doubt that such limitations are placed on assessments for the purpose of assuring the taxpayer, who has made an honest return, that after such period his tax liability will not be reopened; otherwise the business of the country would always have before it the threat of additional taxes against the income of years long past whenever a new theory for interpreting the tax law or for the application of accounting principles occurred to the taxing authorities. If the limitation can be avoided on the plea that the return filed was not such a return as is required by law, although filed in good faith, there is no such assurance for the taxpayer and the limitation becomes of doubtful value at least. If the statute requires any interpretation great weight must be given to the purpose which it was obviously intended to accomplish.

*Judgment of no deficiency will be entered.*