# VICKSBURG, SHREVEPORT & PACIFIC RAILWAY COMPANY ET AL. *v.* ANDERSON–TULLY COMPANY.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 270.　Argued March 24, 1921.—Decided May 16, 1921.

1. The provision of the amended Interstate Commerce Act allowing an action to enforce a reparation order to be brought in any district "through which the road of the carrier runs" (§ 16, c. 309, 36 Stat. 539, 554), applies to a district where the defendant owns no railroad but has its cars hauled by, and over the line of, another carrier for a mileage compensation to and from a point therein where both share the expenses of freight and ticket offices at which the defendant issues tickets and bills of lading to the points on its system outside pursuant to tariffs making no divisions of rates between the two. P. 411.

2. This provision as to venue was not repealed by the legislation abolishing the Commerce Court, 38 Stat. 219. P. 413.
3. Under the Federal Railroad Control Act, § 10, c. 25, 40 Stat. 456, an action to enforce a reparation order based on a shipment which moved before the Government took control of the defendant carrier's railroad, could be brought against the carrier while such control existed. P. 412.
4. A return showing service of summons in such an action on a person described as the carrier's freight agent is not impeached by the fact that the Government was in control of the railroad at the time, in the absence of proof that he was employed by the Director General of Railroads, and not also as agent of the carrier. P. 412.
5. A general finding by the District Court in an action at law tried without a jury is conclusive upon all matters of fact, and in the absence of exceptions to rulings of law during the trial, review in this court is limited to the sufficiency of the complaint. P. 414.
6. A petition, in an action to enforce a reparation order, *held* sufficient under § 16 of the amended Interstate Commerce Act, *supra*, prescribing that such a petition shall set forth briefly the causes for which damages are claimed and the order of the Commission in the premises. P. 415.
7. The pendency of a carrier's application for relief under § 4 of the Interstate Commerce Act as amended in 1910, did not suspend the Commission's power to award reparation for past exactions of an unreasonable rate which the carrier itself corrected by amending its tariffs after the petition for reparation was filed. P. 416.

261 Fed. Rep. 741, affirmed.

ERROR to review a judgment of the Circuit Court of Appeals affirming a judgment for the shipper in an action brought in the District Court to enforce a reparation order made by the Interstate Commerce Commission. The facts are stated in the opinion.

*Mr. Samuel W. Moore,* with whom *Mr. J. Blanc Monroe* and *Mr. Frank H. Moore* were on the brief, for plaintiffs in error.

*Mr. Harry B. Anderson* for defendant in error.

Mr. Justice Clarke delivered the opinion of the court.

This is an action instituted by a shipper under the provisions of § 16 of the Interstate Commerce Act, as amended June 18, 1910, c. 309, 36 Stat. 539, 554, against various carriers, based upon an order of the Interstate Commerce Commission for the payment of money found due as reparation for the exacting of an unreasonable rate for the transportation of "box shooks" in carload lots from Vicksburg, Mississippi, to Port Arthur, Texas, which the carriers refused to pay.

It will be necessary to consider only the liability of the defendant, the Vicksburg, Shreveport & Pacific Railway Company, hereinafter referred to as the Vicksburg Company.

The petition in the case was filed in the United States District Court for the Western Division of the Southern District of Mississippi, and the plaintiff therein, defendant in error, for the purpose of showing the venue, allowed in § 16 of the Interstate Commerce Act, *supra*, alleged that the defendant, the Vicksburg Company, was operating a part of its road within that district. The Vicksburg Company challenged the jurisdiction of the District Court by a plea in abatement, denying that it owned or operated a railroad in the District at the time or for many months before the petition was filed and averred that the person on whom summons was served was not at the time its agent.

The shipper prevailed in both lower courts.

The venue provision of the Interstate Commerce Act allows such an action as we have here to be commenced in any district "through which the road of the carrier runs," and it is contended, first, that the Vicksburg Company did not have a road running through the District of suit, and that, therefore, the court did not have jurisdiction over the case.

It is stipulated that the Vicksburg Company is a Louisiana corporation and that at the times involved it owned a railroad extending through Louisiana to Delta Point, a station on the west bank of the Mississippi River, opposite Vicksburg. Its cars were ferried to and fro across the river and were hauled by the Alabama & Vicksburg Railroad Company, hereinafter called the Alabama Company, over its rails to freight and passenger stations in Vicksburg. The Vicksburg and the Alabama companies shared the expense of freight and ticket offices in Vicksburg, at which tickets were sold and bills of lading issued by the Vicksburg Company from Vicksburg to various points on its line. The Vicksburg Company filed passenger and freight tariffs with the Interstate Commerce Commission without any division of rates with the Alabama Company, that company being paid on a mileage basis for the service which it rendered east of the river. It is also stipulated "that exactly the same arrangement is now in force between" the Vicksburg and Alabama companies "as was in effect before the United States Government took control of these two roads."

Thus the mileage, passenger, freight and tariff publication, arrangements which the Vicksburg Company had with the Alabama Company plainly were equivalent in practice to a lease of the road of that company to the Vicksburg Company for its transportation purposes, and the dealings of the Vicksburg Company with the public and with the Interstate Commerce Commission with respect to traffic to and from Vicksburg were precisely the same as if it had owned or had leased the Alabama Company's tracks. The applicable venue provision of the Interstate Commerce Act does not require that the carrier shall be the owner of a railroad in the District, but only that its road must run through it, and we agree with the Circuit Court of Appeals in concluding that the tracks of the Alabama Company east of the river, in the district

of suit, under the circumstances of operation as the parties stipulated them to be, constituted them the road of the Vicksburg Company within the meaning of the act.

It is next contended that the person on whom summons was served was not, at the time, an agent of the Vicksburg Company.

The return of the marshal is that he executed the writ "by handing a true copy of this summons and petition for judgment to Austin King, freight agent for the Vicksburg, Shreveport and Pacific Railway Company." The plea in abatement denied on "information, knowledge and belief" of counsel that King was at the time of service an agent of either of the defendants. No evidence whatever was introduced to sustain this plea and in support of it sole reliance is placed upon the stipulation that the Government was in control of the lines of the Vicksburg Company at the time the petition was filed.

The unreasonable rate for which the reparation order was made was exacted on shipments moving long prior to the taking over of the railroads by the Government in December, 1917, and there being no evidence that King was not the agent of the Vicksburg Company, the return of the marshal was properly accepted by both lower courts as conclusive. He may not have been in the employ of the Director General of Railroads at all and it was entirely possible for him to have been serving as agent for both the Director and the Company.

Since the shipment for which reparation was allowed moved prior to the taking over of the railroads by the United States Government, as against the objection of government control, we think the provision of § 10 of the Federal Railroad Control Act (40 Stat. 451, 456) is applicable and ample to support the jurisdiction, viz., that "actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity

against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

It is further claimed that the act of Congress abolishing the Commerce Court (38 Stat. 208, 219), repealed by implication the provisions of § 16, *supra*, permitting such reparation suits as we have here to be filed in the District Court for any district "through which the road of the carrier runs" and that for this reason the District Court was without jurisdiction.

The plaintiff was a Michigan corporation and if the provisions of § 16 referred to had been repealed at the time the case was commenced the venue was improperly laid and the court was without jurisdiction.

The argument is that the act of Congress abolishing the Commerce Court, in restoring to the District Courts the jurisdiction which had been vested exclusively in that court, provided that "The venue of any suit hereafter brought to enforce, suspend, or set aside . . . . any order of the Interstate Commerce Commission shall be in the judicial district wherein is the residence of the party or any of the parties upon whose petition the order was made;" (38 Stat. 219) and that this provision for venue is so inconsistent with that of § 16, *supra*, allowing suit to be commenced, on an order for the payment of money, in any district through which the road of the carrier runs, that the latter must be regarded as repealed by implication.

This contention is much too artificial and unsubstantial for us to consider it in much detail. It is enough to say that the two principal amendments to the Interstate Commerce Act of 1887 show that it has been the plainly expressed policy of Congress to make the prosecution of suits upon reparation orders for the payment of money progressively easier and less expensive for the shipper by enlarging the venue provisions of them, doubtless because

many such claims are so small that if suit could be main-
tained by the owners only in distant jurisdictions a large
part of them would be abandoned. Act, 1887, 24 Stat.
379, 384, § 16; Act, 1906, 34 Stat. 584, 590, § 16; Act, 1910,
36 Stat. 539, 554, § 16. The Commerce Court repealing
act was a section of an appropriation act and dealt with
venue only to the extent necessary to redistribute the
jurisdiction of the court abolished and in terms it repealed
only acts or parts of acts in so far "as they relate to the
establishment of the Commerce Court" and again so far
as "inconsistent with the foregoing provisions relating
to the Commerce Court." 38 Stat. 219, 221. The venue
provided for, and relied upon in this suit, was for suits in
the Circuit (District) Court on an order for the payment
of money, and of such suits the Commerce Court never
had jurisdiction.

The contention that Congress intended by implication
to repeal and cut down to such narrow limits the venue
which has gradually been so liberally extended cannot be
entertained. The terms of the repealing act do not justify
it and we cannot doubt that if such purpose had been
intended it would not have been left to inference and im-
plication but would have been clearly expressed.

Coming to the essentials of the case. When the cause
came on for trial on its merits, a jury being duly waived,
it is recited in the entry of the judgment that it was
stipulated, that either party might use in evidence any
part of the record and evidence introduced in the hear-
ings before the Interstate Commerce Commission, which
resulted in the order relied upon, and that any of the
printed reports and findings of the Commission might
be used. It is also recited that the plaintiff introduced
the report of the Interstate Commerce Commission and
the order of the Commission directing the payment of
the money sued for, and rested its case, and that "the
defendants introduced no evidence." Thereupon the

court found that the report and order of the Commission constituted *prima facie* evidence of the facts therein stated and entered judgment in favor of the plaintiff for the amount of the order with interest and an attorney's fee.

There was no request made by the carriers for any ruling of law, and no exception whatever was taken during the trial. There being no special findings of fact by the court, its general finding has the effect of a verdict of a jury (Rev. Stats., § 649), is conclusive upon all matters of fact, and there not being any exceptions to rulings of law in the progress of the trial, the review in this court is limited to the sufficiency of the complaint (Rev. Stats., § 700); *Norris* v. *Jackson,* 9 Wall. 125; *St. Louis* v. *Western Union Telegraph Co.,* 166 U. S. 388; *Lehnen* v. *Dickson,* 148 U. S. 71.

The contention that the petition does not state a cause of action against the carriers first appears in the assignment of errors in the Circuit Court of Appeals, after an elaborate answer and adverse judgment in the District Court. However, the petition avers that the shipper filed its petition with the Interstate Commerce Commission, claiming that it had been charged an unreasonable rate, that upon hearing the Commission entered an order for the payment of money "as reparation on account of an unreasonable rate exacted for the transportation" of its freight, that the order required payment to be made by a date named, that the carriers had refused payment when demanded, and that the suit was instituted under the Act to Regulate Commerce of 1887, and amendments thereof. To this petition copies of the report and order of the Commission were attached. These allegations were amply sufficient to meet the requirements of the statute, that the petition in such a case shall set forth briefly the causes for which damages are claimed and the order of the Commission in the premises. (36 Stat. 539, 554, § 16.)

It is also contended that it was not competent for the Interstate Commerce Commission to enter the order which was made, for the reason that before the hearing by the Commission · the carriers had filed an application for relief under § 4 of the Interstate Commerce Act, as amended in 1910, which had not been disposed of at the time the order was made, and that therefore the provision of that act that no rates or charges lawfully existing at the time of the passage of the amendment should be required to be changed until the determination of such application by the Commission, was applicable. To this it is sufficient to say that it appears from the Commission's first report that immediately after the filing of the complaint with the Commission the carriers amended their tariffs so as to correct the unreasonable rate which was complained of under § 3 of the act, and we quite agree with the Commission that whatever the application under § 4 may have been (there is no copy of it in the record), such amendment removed the occasion for further suspension of action by the Commission under the provision quoted. The Commission aptly says that the rate then on file conformed "to the requirements of the fourth section and defendants' application in so far as this adjustment is concerned has no further office to perform."

The final contention that the facts found by the Interstate Commerce Commission were so adopted by the District Court as to become special findings of fact by that court which may be reviewed by this court without exception being taken to any of them is too trivial to deserve discussion.

It results that the judgment of the Circuit Court of Appeals is

                                        *Affirmed.*