UNITED STATES v. PENNSYLVANIA R. CO.

District Court, W. D. Pennsylvania.   April 26, 1927.

No. 408.

1. Commerce ⚫══88—Interstate Commerce Commission's rulings, though not conclusive on court, are highly persuasive.

Rulings of Interstate Commerce Commission, though not conclusive on federal District Court, are at least highly persuasive.

2. Railroads ⚫══5½(4)—Railroad acquiescing in equalization of discriminatory long and short haul rates for two years after termination of federal control held not authorized to restore discriminatory rates (Interstate Commerce Act, § 4, as amended by Act June 18, 1910, § 8, and Transportation Act 1920, § 406 [49 USCA § 4]).

Under Interstate Commerce Act, § 4, as amended by Act June 18, 1910, § 8, and Transportation Act 1920, § 406 (49 USCA § 4 [Comp. St. § 8566]), where Director General of Railroads during federal control equalized defendant railroad's freight charges which had discriminated against intersecting points in favor of longer haul points on same line, and defendant acquiesced in such equalization for two years after termination of federal control, *held* that defendant was not authorized to restore such discriminatory rates without consent of Interstate Commerce Commission, in view of Interstate Commerce Commission Conference Rulings 395, 406, and General Order No. 3700, notwithstanding its petition for relief from provisions of such section 4, filed before federal control, was never acted on by Commission.

3. Carriers ⚫══38—Carrier asserting right to charge discriminatory long and short haul rates without consent of Interstate Commerce Commission held guilty of willful violation of statute (Interstate Commerce Act, § 4, as amended by Act June 18, 1910, § 8, and Transportation Act 1920, § 406 [49 USCA § 4]).

Where railroad had knowledge of its published discriminatory long and short haul freight rates and asserted right to enforce such rates without obtaining consent of Interstate Commerce Commission, as required by Interstate Commerce Act, § 4, as amended by Act June 18, 1910, § 8, and Transportation Act 1920, § 406 (49 USCA § 4 [Comp. St. 8566]), there was sufficient guilty knowledge or intent to justify conviction for willful violation of statute.

In Equity. Criminal proceeding by the United States against the Pennsylvania Railroad Company for violation of Interstate Commerce Act. Defendant adjudged guilty as indicted.

J. D. Meyer, U. S. Atty., and Raymond D. Evans, Asst. U. S. Atty., both of Pittsburgh, Pa.

Wm. J. Flood, of Washington, D. C., for Interstate Commerce Commission.

W. S. Dalzell and James Stillwell, both of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. An indictment was returned into this court against the Pennsylvania Railroad Company, charging that company in ten counts with violations of the Interstate Commerce Act. The defendant pleaded "not guilty." A jury trial was waived, and the case was heard before the court. The facts are largely admitted, the defendant conceding that the averments of fact contained in the ten counts are true, and that it is guilty as indicted, unless it was protected by law in the rates charged, and unless, in addition, the evidence in the case was sufficient to make out a case of willful disobedience of the law.

The defendant, as charged in the first nine counts of the indictment, transported in interstate commerce, fire brick and fire clay from New Salisbury and Irondale, Ohio, to Creighton, Brackenridge, and Butler, Pa., over the same route, in the same direction, and charged therefor higher rates to Creighton and Brackenridge, intervening points, than to Butler, the longer haul; likewise, as charged in the tenth count, the defendant transported, in interstate commerce, paving block from Chester, W. Va., to Tarentum and Butler, over the same route, in the same direction, and charged therefor higher rates to Tarentum, an intervening point, than to Butler, the longer haul. The defendant knew of these discriminating rates; its attention having been specifically called to them prior to the date of the offenses charged in the indictment.

The statute involved is the fourth section of the Interstate Commerce Act. As originally passed in 1887 (24 St. L. 379), this section forbade a greater rate for a shorter than a longer distance over the same line in the same direction, but provided that the Interstate Commerce Commission might, on the application of the carrier, authorize the carrier in special cases to charge less for longer than for shorter distances for the transportation of passengers or property. Then came the amendment of June 18, 1910 (36 St. L. 539, 547), which, while it continued the prohibition against discriminatory rates for the shorter haul, contained the following proviso:

"Provided further, that no rates or charges lawfully existing at the time of the passage of this amendatory act shall be required to be changed by reason of the provisions of this section prior to the expiration of six months after the passage of this act, nor in any case where application shall have been filed be-

fore the Commission, in accordance with the provisions of this section, until a determination of such application by the Commission." Section 8.

Then came the Transportation Act of 1920 (41 St. L. 480), which still continued the prohibition against discriminatory rates for the shorter haul, but provided as follows:

"And provided further, that rates, fares, or charges existing at the time of the passage of this amendatory act by virtue of orders of the Commission or as to which application has theretofore been filed with the Commission and. not yet acted ·upon, shall not be required to be changed by reason of the provisions of this section until the further order of or a determination by the Commission. Section 406 (49 USCA § 4 [Comp. St. § 8566]).

The defendant, at the time of the passage of the act of 1910, had in effect discriminatory rates affecting the carriage of freight between the points mentioned in the indictment, and, within the time limited by the act of 1910, filed with the Interstate Commerce Commission its application for relief from the provisions of the fourth section of the amendatory act. That petition up to the present time has never been heard nor acted upon by the Commission.

On January 1, 1918, the defendant company, among other trunk line railroads, was taken by the government under federal control and continued thereunder till March 1, 1920. During the period of federal control, and by orders of the Director General, the freight rates between the points mentioned in this indictment· were equalized, and the discriminatory rates were removed, and this state of things ·continued until 1922, when the defendant, without authority from the Interstate Commerce Commission, again put into effect discriminatory rates affecting the points mentioned in this indictment, and now contends that such rates are protected under the law by reason of the fact that its application for relief under the fourth section of the amendatory act of 1910 has never been acted upon by the Interstate Commerce Commission.

The government contends, on the other hand, that, when these discriminatory rates were once removed, they could not be restored without special authority from the Commission, even though the railroad company's application had never been acted upon.

This brings us to the only question involved, and its correct answer controls the decision of the case; i. e., What was the legal effect of the removal of the long and short haul departures in the instant case by the Director General of Railroads, and the subsequent acquiescence in such equalization of rates by the defendant for two years after the railroad was restored to its control?

[1] The Interstate Commerce Commission has spoken upon this subject, and, while its rulings are not conclusive upon this court, they are at least highly persuasive. Chicago Great Western R. Co. v. Postal Telegraph-Cable Co. (D. C.) 245 F. 592, 600.·

In its Conference Ruling 395, on December 16, 1912, the Commission said:

"395.  Violations of the Fourth Section.— Confirming the general principle of an order entered and announced on January 26, 1911, it is held, that when a carrier in obedience to the requirement of the fourth section of the act has, after August 17, 1910, corrected discriminations against intermediate points, it may not lawfully restore such discriminatory rates unless upon formal application the Commission finds justifying circumstances and authorizes a deviation from the long and short haul rule."

Again, in its Conference Ruling 406, on April 7, 1913, the Commission said:

"406. · Violation of the Fourth Section.— A violation of the long and short haul clause, having been canceled out of its tariffs, may not lawfully be restored by the carrier without the special authority of the Commission, even though the violation was in existence when section 4 of the act was amended on June 18, 1910."

These· rulings have been consistently ·followed by the Commission in the consideration of individual cases, among which may be noted the following:

A carrier, in 1913, through inadvertence, filed a tariff joint through rate applicable to the points intermediate thereto, thus removing the fourth section departures. "The equities of ‚the situation would seem to demand a resumption of the status quo as it was in July, 1913, so far as that may be possible, and a hearing· upon the justice and reasonableness of the rates as they existed at that time. This situation could be attained by the entry of an order requiring the restoration of the former rates were it not that to re-establish the junction point rates would ‚cause a deviation from the long and short haul rule of the fourth section. The original applications, which protected such deviations from that rule, were rendered inoperative when the carriers canceled their joint rates. Conference Ruling No. 395. Such applications can be made only by the carriers, and cannot be required by the Commission.

\* \* \* If they desire to continue to compete for business at the junction points, they may file applications under the fourth section for authority to restore the former rates at those points." In Cement Rates from Mason City, Iowa, 30 Interst. Com. Com'n R. 426.

Likewise, through inadvertence, another carrier, by tariff effective July 15, 1920, removed fourth section departures. The carrier sought to re-establish its discriminatory rates by schedule filed. The Commission said: "In Conference Rulings 395 and 406 we stated, that, after a long and short haul departure is removed, it may not be lawfully restored without our special authority, even though the departure was in existence when the fourth section was amended." In Intermediate Application of Class Rates from Lexington, Ky., 77 Interst. Com. Com'n R. 427.

Again considering the same subject, the Commission said: "The correction of the fourth section departure renders any finding with respect to it unnecessary." Scott Paper Co. v. Atlantic City R. Co., 44 Interst. Com. Com'n R. 503.

Again: "Whatever fourth section applications may have protection, fourth section departures in the past are now inoperative because the carriers have since complied with the fourth section." In Tin, Terne & Black Plate from Defined Territories to Texas, 92 Interst. Com. Com'n R. 356.

Again, speaking of fourth section departures removed by a new tariff published by carrier: "These departures cannot be reinstated without new authority from us." In Lumber From Pacific Coast, 95 Interst. Com. Com'n R. 744.

This interpretation of the fourth section of the Interstate Commerce Act by the Commission appears to be reasonable and proper. The purpose of the act is to protect shippers against discrimination in rate charges. Such rates are to be charged only in special cases where the Commission finds on investigation that such discriminatory rates are proper. Cases of discriminatory rates in existence at the time of the passage of the act of 1910 are protected by application filed with the Commission until such time as the Commission acts upon the application, but, where the carrier itself, by its own act, removes the discriminatory rates, there is no reason for acting on the pending application. It is in effect withdrawn by the carrier.

This interpretation of the statute has also been confirmed by the Supreme Court. The Alabama & Vicksburg Railway Company had in effect certain discriminatory rates which would violate section 4 of the Interstate Commerce Act unless the company was protected by an application filed under the terms of the act. The company had, however, after the filing date of the application, brought its rates into conformity with fourth section requirement. The Commission held that the fourth section application was automatically canceled as to such rates, and awarded reparation to the shipper. Interstate Commerce Commission, Special Docket No. 5537, I. C. C. The shipper brought suit in the United States District Court for the Western Division of the Southern District of Mississippi to recover the reparation award of the Commission. Judgment was given to the shippers, and the case was appealed (Vicksburg, S. & P. R. Co. v. Anderson-Tully Co. [C. C. A.] 261 F. 741), reaching the Supreme Court, which fully upheld the Commission's interpretation of the statute. That court said:

"It is also contended that it was not competent for the Interstate Commerce Commission to enter the order which was made, for the reason that, before the hearing by the Commission, the carriers had filed an application for relief under section 4 of the Interstate Commerce Act, as amended in 1910, which had not been disposed of at the time the order was made, and that therefore the provision of that act that no rates or charges lawfully existing at the time of the passage of the amendment should be required to be changed until the determination of such application by the Commission was applicable. To this it is sufficient to say that it appears from the Commission's first report that immediately after the filing of the complaint with the Commission the carriers amended their tariffs so as to correct the unreasonable rate which was complained of under section 3 of the act [Comp. St. § 8565], and we quite agree with the Commission that whatever the application under section 4 may have been (there is no copy of it in the record), such amendment removed the occasion for further suspension of action by the Commission under the provision quoted. The Commission aptly says that the rate then on file conformed 'to the requirements of the fourth section and defendants' application in so far as this adjustment is concerned has no further office to perform.'" Vicksburg, S. & P. R. Co. et al. v. Anderson-Tully Co., 256 U. S. 408, 41 S. Ct. 524, 65 L. Ed. 1020.

The defendant apparently does not differ with this construction of the act, but contends that it has itself done nothing to adjust the rates involved here to fourth section

requirements, but, on the contrary, its tariff of 1922 is but an ordinary change in rates authorized by the Interstate Commerce Commission by its fourth section orders of January 26, 1911, and February 3, 1914; the latter being known as fourth section order No. 3700. This later order was in force at the time of the publication of the tariffs of 1922, and is in part as follows:

"It is further ordered, that effective March 15, 1914, as to and confined in all cases to rates and fares which are included in and covered by applications for relief from the provisions of the fourth section of the act to regulate commerce that were filed with the Commission on or before February 17, 1911, and until the applications including and covering such rates or fares have been passed on by the Commission, carriers may file with the Commission, in the manner and form prescribed by law, and by the Commission's regulations, such changes in rates and fares as occur in the ordinary course of their business, continuing higher rates or fares at intermediate points, and through rates or fares higher than the combination of intermediate rates or fares, provided that in so doing the discrimination against intermediate points is not thereby increased."

[2] This leads us first to consider whether the rates established by the Director General of Railroads which brought the rates involved here to fourth section requirements became binding on the defendant. The rates so adopted were actually filed by the company. It therefore had knowledge of this existence. By section 208 of the Transportation Act of 1920 (41 Stat. 464), they continued till changed by due authority.

Had defendant promptly, after March 1, 1920, disavowed the rates established by the Director General, and re-established the fourth section departures in existence at the time the railroad went under federal control, we should have that question to consider and determine. The defendant did nothing of the sort, however, but on the contrary acquiesced in those rates for over two years, and for that reason we hold that the defendant conclusively ratified and confirmed the rates published under federal control; and we must consider and determine this case just as though the defendant itself had originally removed the fourth section departures and then had sought to re-establish them.

Under the authorities above cited, that cannot be done, and General Order No. 3700 does not authorize new departures from the fourth section, for the act specifically allows such departures only in special cases authorized by the Commission only after investigation, and upon the application of the carrier. In construing its own orders, the Commission has so held:

In Lumber From Pacific Coast, 95 Interst. Com. Com'n R. 744, the Commission said at pages 746 and 747:

"Respondents rejoin that our fourth section order No. 1125 gives them the continuing right to depart from this requirement of the fourth section where the positions of the railways render it necesary to route traffic through higher rated to lower rated territory. But this contention is unsound. When the intermediate clause here under suspension was published it automatically removed fourth section departures at unnamed intermediate points. These departures cannot be reinstated without new authority from us."

In Investigation and Suspension Docket No. 1643 Paper and Paper Articles From Defined Territories To Southwestern Points, 78 Interst. Com. Com'n R. 600, the Commission said at page 601:

"Respondents urged at the hearing that the proposed fourth section departures are authorized by paragraph 10 of our fourth section order No. 3700 in connection with their general fourth section applications. * * * Respondents' position as to paragraph 10 of fourth section order No. 3700 is not correct. That order does not permit the creation of fourth section departures where the rates conform to the provisions of the fourth section, or where, as in this case, previous departures have been eliminated."

[3] On the question of whether there has been any willful violation of the statute by the defendant, we hold that the evidence and the agreed facts show that the defendant had knowledge of the rates published and shipped goods under a contention of their legal right so to do. That is all the guilty knowledge or intent that the law requires. Armour Packing Co. v. U. S., 209 U. S. 56, 28 S. Ct. 428, 52 L. Ed. 681.

On the evidence and the agreed facts in this case, we find the defendant guilty as indicted. Judgment will be entered accordingly.