## GLOBE INDEMNITY CO. v. SOUTHERN PAC. CO.

Circuit Court of Appeals, Second Circuit. February 11, 1929.

No. 70.

Daniel Combs, of New York City (Patrick B. Healy, of Brooklyn, N. Y., and E. De T. Bechtel, of New York City, of counsel), for plaintiff in error Globe Indemnity Co.

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder and Eugene Underwood, Jr., both of New York City, of counsel), for defendant in error Southern Pacific Co.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This case was tried before the court on a stipulation waiving a jury. The action was to recover damages on a bond to secure the plaintiff in making advance payments on a contract to construct three vessels. The salient facts were stated in our opinion reported at 21 F.(2d) 288, on the former appeal. While the appellant has reargued most of the matters there disposed of, we see no reason to depart from our general conclusions. If the dictum in Prairie State Nat. Bank v. U. S. (U. S. v. Hitchcock) 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412, and the authority of kindred cases as to the complete release by advance payments of a surety who acquired rights when the contract was entered into might have been applicable in other circumstances, it cannot apply to this situation where the bonds were taken to secure the final payments before the final trial trips were run on El Estero and El Isleo, and where the advance payment of $50,000 on El Lago was made the day before the abandonment of the contract, and therefore could not have diminished the incentive of the principal to perform. This last advance payment, while prejudicial because it lessened security, consisting of the unpaid installments applicable to unfinished work, only released the surety pro tanto. No case is cited holding that the surety is completely released by an advance payment without consent of the surety, where it appears, as here, that the payment was made on the eve of abandonment of the contract and the appointment of receivers of the principal, so that the contractor's incentive to prosecute the work cannot have been affected. The release in such a situation is only pro tanto. St. John's College v. Ætna Indemnity Co., 201 N. Y. 335, 94 N. E. 994; United States Fidelity & Guaranty Co. v. Golden Pressed & Fire Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242.

The questions to be considered on this appeal are:

(1) The effect of the "ready for delivery payment" of $71,666.66 on the steamer El Isleo, and of the advance payment on January 3, 1921, on the steamer El Lago, upon the adjustment of the damages.

(2) The amount of liquidated damages at $1,333 per day due on El Lago after the abandonment of the contract.

(3) The allowance of interest.

The "ready for delivery" payment of $71,666.66 on El Isleo was made on January 6, 1921, after the abandonment of the contract on January 4th, and operated pro tanto to release the surety. In other words, this sum, because it would have been available to complete the work if it had been withheld, as it should have been, must be treated as a credit to the surety company. The same is true of the $50,000 advance payment on the El Lago, which was paid to the prejudice of the surety company, without its consent, and cannot be included in the claim against it. These conclusions necessarily follow from our decision on the former appeal. The advance final payments of $71,666.66 each, on El Estero and El Isleo, are proper credits to the plaintiff, because the bond was furnished to enable these advances to be made.

The plaintiff claims liquidated damages amounting to a total of $137,299. Of these $57,319 are on the three vessels under construction prior to abandonment of the contract on January 4, 1921, and $15,996 on El Isleo subsequent to abandonment. The remaining $63,984 represents liquidated damages on El Lago subsequent to the abandonment of the contract. This last item is the only one of the three, the amount of which is in dispute.

It is contended, however, that plaintiff should have deducted any liquidated damages that had accrued before making an advance, and that the failure to do this operated at least pro tanto as a release. But the construction contract did not require the reduction of the installments by such accruals. It only provided that, in case of delayed completion, the contractor "shall be liable to pay to" plaintiff this damage at the rate of $1,333 per day. Liquidated damages did not constitute a pro tanto reduction of the purchase price, though they doubtless, if plaintiff had desired, might have been set off.

Plaintiff's proof shows that the boilers

were installed in El Lago on December 4, 1920, and that it would have taken two months after that date to complete the work on the vessel with normal progress. She was completed by the plaintiff on March 3d following. Her delivery was due under the extended contract on December 4th. Thus she should have been completed February 4th, though she was not completed until March 3d. The plaintiff seeks to obtain liquidated damages from December 4th until March 3d, by extending the two months after December 4th required to complete her. Its argument is based on statements by plaintiff's witness Marks that El Lago was held back six or eight weeks, while El Estero was being finished. But this additional time obviously cannot be added, unless the delay was after December 4th, when the boilers were installed. There is no proof that the delay was not prior, and it seems practically certain that it must have been, for El Estero was delivered on November 24th, and little work was done to complete her after that date. Between January 4th and February 4th there were 27 working days. Therefore there would be damages during that period on El Lago, at $1,333 per day, to the amount of $35,991. If this sum be added to the other undisputed items of liquidated damages, amounting to $73,315, the total is $109,306.

Now the original contract price for building the three ships was $4,300,000. Prior to November 24, 1920, it was agreed that windlasses less costly than those provided in the contract might be installed by the contractor, and that the plaintiff might deduct $9,350 from the contract price for the windlass furnished to each ship, or $28,050 altogether. The windlasses so substituted were installed before the contract was abandoned. Extra work on the ships was done by the contractor to the amount of $3,930, so that the total amount due from the Southern Pacific Company to complete the work was $4,275,880, or $4,300,000+$3,930—$28,050=$4,275,880.

It appears from Exhibit 1 in the agreed statement of facts that there was paid by the Southern Pacific Company, to or for the account of the contractor, $4,063,333.29. This included, however, the "ready for delivery" payment of $71,666.66 made January 6, 1921, on El Isleo after the contract was abandoned, and the $50,000 advance "ready for delivery" payment made January 3, 1921, on El Lago before such sum had become due under the terms of the contract. The payment of $71,-666.66 cannot serve as a charge against the surety, because it was paid after the contract was abandoned on January 4th, and the pay-

ment of $50,000 also cannot be charged. It seems convenient to credit both these items to the plaintiff, seeing that it paid out both sums on account of the construction contract, and then to charge them both on the other side of the account, because they cannot be included in the claim for damages against the defendant.

The credits to the plaintiff based upon plaintiff's proofs that it would take two months after the installation of the engines and boilers to complete the El Lago are as follows:

| | |
|---|---|
| Paid on El Estero........................ | $1,433,333 32 |
| Paid on El Isleo without including ready for delivery payment made January 6, 1921, of $71,666.66.................... | 1,361,666 65 |
| Paid on El Lago, without including advance payment of $50,000, made without consent of surety...................... | 1,146,666 66 |
| Paid on El Isleo, ready for delivery payment after abandonment of contract... | 71,666 66 |
| Paid on El Lago in advance, without consent of surety...................... | 50,000 00 |
| Paid after abandonment of contract to complete work and to satisfy liens on three vessels .......................... | 283,029 02 |
| Due Southern Pacific Company, liquidated damages because of delay in completion of contract.................. | 109,306 00 |
| Making total credits.................. | $4,455,668 31 |

The debits to the plaintiff are as follows:

| | | |
|---|---|---|
| El Isleo payment after abandonment of contract | $ 71,666 66 | |
| El Lago advance payment without consent of surety | 50,000 00 | |
| | $ 121,666 66 | |
| Contract price for construction of three vessels after deduction of allowance for cheaper windlasses........ | 4,275,880 00 | |
| Balance due plaintiff.... | 58,121 65 | $4,455,668 31 |

It is said that in our former opinion we held that any advance made before the abandonment of the contract was covered by the bond. While there was some general language indicating such a view, the decisions turned upon the effect of the payment of the "ready for delivery" installment of $71,666.-66 on El Isleo after abandonment of the contract. The judge had held upon the first trial that this payment completely discharged the surety, and we reversed a judgment dismissing the complaint, because it operated only as a discharge pro tanto. The $50,000 advance payment on El Lago, while mentioned, was not necessarily or specially considered in our earlier opinion. In view of the dealings between the parties, we cannot think that the bond was furnished to enable the plaintiff to make any advance payments it chose. The bond was too small to make such an interpretation of its scope probable, for, when it was issued, installments amount-

ing to $891,666.67 remained unpaid, and much of the work was still uncompleted.

■ The first bond was exacted to obtain the final payment on El Estero before the trial trip was run. The last bond on which this action was brought was further exacted because the plaintiff refused to make the final payment on El Isleo without it. It recites that the contract provides for progress payments, and that "the last payment of 5 per cent. will be made after the final trial trip has been run by each ship, * *. * " and that the principal "is desirous of releasing a part of moneys so retained, and in consequence thereof is to furnish this undertaking."

The condition of the bond is: "That if the * * * principal shall indemnify and save harmless * * * against any and all loss sustained by reason of having released a portion of the moneys so withheld before the final trip has been run by each ship * * * including any loss on account of liens, claims and incumbrance on any of said ships, then this obligation shall be void; otherwise, to be and remain in full force and effect."

Under all the circumstances, it seems clear that the bond covers all damage due to failure of the contractor to perform the contract, including any loss because of liens which might have been satisfied by withholding the final payments. To the extent of the penal sum, it covers this, and this only. The final payments could be advanced before the trial trips were run, because the bond was given for that purpose. No further consent of the surety was required. Other payments could not be advanced without its consent. This construction of the bond was adopted in the complaint itself (paragraphs "Sixth," "Seventh," and "Eighth").

The recital in the bond (above quoted) that the principal is desirous of releasing a part of the moneys retained, just after the recital that the last payment of 5 per cent. will be made after the final trial trip has been run by each ship, seems to bear out our contention.

■ ■ The question remains as to whether the foregoing balance should bear interest. This depends on whether it is an obligation for the payment of money. The bond provided that the principal and surety "are held and firmly bound unto Southern Pacific Company * * * as obligee in the penal sum of * * * $100,000 * * * for the payment of which, well and truly to be made, we bind ourselves, our successors and assigns. * * * " The bond is conditioned to "indemnify and save harmless the said obligee against any and all loss by reason of having released a portion of the money so withheld."

The plaintiff can only be indemnified by the payment of money, especially when the principal obligation remaining is to pay liquidated damages at a fixed amount per day for delay in completing the vessels. The contract and bond were made in New York, and that law governs. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; Tuzzeo v. American Bonding Co., 226 N. Y. 171, 123 N. E. 142. The Civil Practice Act of New York, § 160, allows interest even where, as here, the sum due for the breach when interest is added exceeds the penal sum named in the bond. Interest should run from the date of the commencement of the action. Illinois Surety Co. v. John Davis Co., supra.

■ ■ It is suggested in the brief of defendant's counsel that the District Court should have made special findings. This was unnecessary, and its general finding had the effect of a verdict of a jury. Vicksburg, etc., Ry. Co. v. Anderson-Tully Co., 256 U. S. 408, 41 S. Ct. 524, 65 L. Ed. 1020; Compania Transcontinental de Petroleo v. Mexican Gulf Oil Co. (C. C. A.) 292 F. 846. It is only in so far as that finding is unsupported by evidence, or is based on erroneous legal theories, that we can review it here. Assuming, as we must, that the trial court believed the plaintiff's witnesses as to the length of time required for the completion of El Lago, a judgment for $58,121.65, with interest from March 22, 1923, should have been rendered.

The judgment is reversed, unless the plaintiff shall, within 10 days, file a stipulation to reduce the payment to $58,121.65, with interest from March 22, 1923, in which event judgment is granted to the plaintiff as so reduced.