**AIKEN MILLS, Inc., v. BOSS MFG. CO.**

No. 434.

Circuit Court of Appeals, Second Circuit.

June 5, 1933.

H. A. Cushing, of New York City (Frederick N. Van Zandt, of New York City, and Cooke, Sullivan & Ricks, of Chicago, Ill., of counsel), for appellant.

Stroock & Stroock, of New York City (Kenneth M. Spence, of New York City, Thornton Alexander, of Boston, Mass., and

George Rosier, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendant at law for the price of certain parcels of Canton flannels manufactured by it and in its warehouses. The complaint alleged as a first cause of action that part of the goods had been delivered. As a second it alleged that the contract of sale intended to cover a specific lot of goods in a deliverable state stored at the plaintiff's mills when the contract was made, and that the goods had been set apart and marked by the plaintiff for the defendant, and appropriated to the contract with the defendant's assent. Only the allegation that the goods had been set apart, marked and appropriated was denied in the answer. As third and fourth causes of action the complaint alleged the same things as in the second, except that it omitted the allegation that the goods had been set apart, marked and appropriated. The defendant pleaded two counterclaims; first, a breach of warranty because the goods were mildewed when the contract was made; second, that during the time when the plaintiff held the goods, it was negligent in caring for them and that they were flooded and injured. When the cause came on to be heard before a judge and jury, the parties orally stipulated in open court that it should be decided by the judge, and this was entered upon the record, thus conforming with section 773 of title 28, U. S. C., as amended by the Act of May 29, 1930 (28 USCA § 773). The plaintiff then moved for judgment on its complaint as admitted, decision on which the judge reserved until the conclusion of the evidence. Apparently relying solely on its motion, the plaintiff put in no evidence, and the defendant began its case on the counterclaims. At the close of the evidence the plaintiff moved to dismiss the second counterclaim on the ground that there was no evidence of any negligence, and this the judge granted. In his discussion he made it clear that he was disposing of the case upon the whole evidence; that is, that he was not merely deciding whether the defendant had made a case which could have gone to a jury, though probably that was all that was before him. The defendant excepted to this ruling. He also dismissed the first counterclaim, but no question is now raised as to the propriety of this, because the defendant failed to prove its damages. Having so disposed of the counterclaims the judge took up the plaintiff's motion for judgment on the complaint and granted it, to which the defendant excepted. The appeal comes to us therefore upon the exceptions to the order on the complaint as admitted, and to the dismissal of the second counterclaim. Nothing else has been argued.

The goods were stored in the plaintiff's warehouses, where under the contract it had agreed to hold them for sixty days, insuring them meanwhile. They were flooded while there by a series of storms of exceptional severity, and the question under the second counterclaim was whether the plaintiff should not either have moved them, or blown up its dam above the warehouse earlier than it did. The parties had entered into three contracts, one on September thirteenth for about 600,-000 yards, and two on October first, for about 43,000 more. All three were in the form of broker's sales notes, stating the quantity. "Assortment of weights and widths and prices as per list attached." "Terms less 3% 10 days f. o. b. mill. Date invoices as Oct. 1, 1929. Delivery Spots." An excuse was provided, if the mill's production was curtailed by strikes; and the notes concluded as follows: "Shipping Directions: Goods to be held at mill covered by insurance for period not to exceed sixty (60) days." To the notes were attached lists of the goods which gave the numbers of bales of specified quality and style number, with the aggregate yardage of each style, its price per yard and the total price of the bales of that style. The yardage was footed and also the total price in dollars and cents. The lists concluded as follows: "Detail yardage slips, in duplicate, attached. Goods invoiced and held."

As the case comes up we have jurisdiction to review only questions of law raised during the trial. Section 875, title 28, U. S. Code (28 USCA § 875). We cannot go into the record and consider any question of fact. Law v. U. S., 266 U. S. 494, 45 S. Ct. 175, 69 L. Ed. 401; Vicksburg, etc., Ry. Co. v. Anderson-Tully Co., 256 U. S. 408, 41 S. Ct. 524, 65 L. Ed. 1020. A refusal to dismiss the counterclaim because the defendant had failed to make out a case sufficient for submission to a jury, had there been a jury, would be reviewable. Maryland Casualty Co. v. Jones, 279 U. S. 792, 49 S. Ct. 484, 73 L. Ed. 960. So also, a failure to give judgment for the plaintiff where the facts are undisputed, or the dispute trivial. St. Louis v. Western Union Telegraph Co., 148 U. S. 92, 96, 13 S. Ct. 485, 37 L. Ed. 380. The plaintiff's motion, which was confined to a question of law, was undoubtedly made to preserve its appeal, had it been denied; it carefully refrained

346

from moving generally for judgment. The embarrassment is, that it is at least doubtful whether the judge could properly have taken the case away from a jury, for the evidence was scarcely so one-sided as that. If so, he should have denied the motion, and considered the whole evidence. On the other hand he certainly could not properly have granted a motion of the defendant, had one been made, for judgment on the counterclaim as matter of law, because the evidence showed at least reasonable doubt as to the plaintiff's negligence.

█ It is possible to conceive of some prejudice to the defendant in the grant of such a motion; the judge might have disposed of the case on a wrong theory of law, without considering the facts, as the defendant was entitled to have him do. Such a hazard a party always takes when he successfully moves to take away the consideration of any issues of fact from the tribunal which should consider them, whether it be judge or jury. But here, in spite of the form of the motion, the judge did in fact consider all the evidence, and made his conclusion as one of fact. This appears beyond cavil in his language when finally granting the motion, which we quote: "I have not done this without most careful consideration of the testimony, and with a feeling that I would have preferred to have a jury in the case, although I think the case would have resulted in exactly the same way, because I *think* I should have been compelled to dismiss the counterclaim." This can only mean that he had considered the case on the whole evidence, and was in at least some doubt whether it would have supported a verdict, if a jury had found one. Clearly he did not mean to decide only the motion for a nonsuit. It would be a parody after such a statement to reverse his ruling, because in form the motion was the equivalent. Indeed, even if we disregarded his tentative expression, we should have to say that although he thought the case too weak to support a verdict, he might still have found for the defendant on the whole evidence. That would be absurd; the issue is the same, the only difference being that the evidence must be weaker to justify the motion than to support a finding against the defendant. Though we say that such a motion raises a question of law, what we mean is that under our system, the courts reserve a power over questions of fact to avoid the substitution of whimsies of a jury for honest conclusions. When the judge acts both as a judge and jury, the grant of such a motion, though erroneous, can

harm the beaten party only in case it goes off on another question; and in the case at bar no such possibility existed. It would therefore be mere pedantry to reverse the ruling, even though the plaintiff should not strictly have succeeded on the motion; which we do not decide.

There remains the question whether the judge was right in giving judgment for the plaintiff on the complaint, as admitted. As it did not put in any evidence, it left unproved any issues raised by the answer. The most important allegation was in the tenth article of the complaint, which was not denied, and which read as follows: "The agreement referred to in paragraphs 'Fourth' and 'Fifth' hereof was intended to and did cover the sale by the plaintiff to the defendant of a specific lot of goods in deliverable state, stored at plaintiff's mill at Langley, South Carolina, at the time said agreement was entered into." The fourth article alleged that the parties had entered into an agreement by which the plaintiff "sold" and the defendant "purchased * * * about 600,000 yards first quality Canton flannel." It then incorporated the list attached to the sales note. The fifth article added the date of invoice, the terms of sale and "that the goods were to be held at the mill covered by insurance for a period not to exceed sixty days." The allegations as a whole were consonant with the sale of certain bales by their numbers, which would have been a sale of specific goods whose title would pass when the contract was made. Section 100, rule 1, N. Y. Personal Property Law (Consol. Laws, c. 41). The contract, as pleaded, could be treated as a sale of specified goods, if that was its proper interpretation. If it was not, but of goods to be ascertained, at least, again as pleaded, it did not preclude evidence that the goods were already specified. Certainly, the pleading did not show it to be a final memorial of the parties' intent in this regard. The tenth article alleged that it did cover specified goods; that was an issuable allegation of fact, and, had it stood alone, had to be denied to raise any material issue.

This is a complete answer as to the third and fourth causes of action, which contained only repetitions of the tenth article. However in the second cause of action the pleader introduced the eleventh article which, as we have said, alleged that the goods were set apart, marked and appropriated to the contract with the defendant's assent, and this left that cause of action somewhat obscure. It was apparently added to cover a sale of

unascertained goods, under section 100, rule 4 of the N. Y. Personal Property Law, and that was inconsistent in legal theory with the tenth article. Perhaps we ought to hold, taking the two articles together, that the sale was of goods specific only because set apart and marked before the contract was made. The denial of the eleventh article would on that hypothesis strike out an essential part of the allegation. In that case, perhaps the plaintiff was not entitled to judgment upon the complaint, and the ruling was wrong.

We do not think it necessary to decide the point. In fact it is scarcely possible that the sale was not of specified goods; the exact yardage was given; they were to be insured; they were stated to be "held." If, however, we treat it as a sale of goods to be ascertained, but if it appeared beyond dispute on the trial that they had been set apart for the contract, we may affirm the judgment, on the theory that the formal pleadings did not matter. Now, the second counterclaim itself presupposed that title had passed, because it charged the plaintiff with neglect as bailee. We concede that counterclaims, as well as defences, the defendant may plead in the alternative, but we think that here it was in substance proved that title had passed. At the outset of its proof the defendant introduced as an admission the plaintiff's reply to its original answer. This alleged that "the balance of the merchandise ＊ ＊ ＊ was being held by the plaintiff for the defendant's account and while so being held was damaged by floods." This referred to all the goods except those described in the first cause of action, and the offer was not limited to the issues upon the counterclaim. The admission became evidence for all purposes, and it was not contradicted by anything that appeared later. On the contrary the defendant called an employee of the plaintiff, one Sofge, whose testimony, though somewhat vague, supported the conclusion that the goods had in fact been set apart for the contract. The case was thereafter tried on the assumption that the truth was as he said.

While therefore the plaintiff by offering no proof upon the issues may have formally laid itself open to a judgment of default, yet after a long trial upon the presupposition that title had passed, and after the defendant had without limitation offered evidence to that effect, it seems to us that the formal error, if any, became immaterial. We regard it as falling within section 391 of title 28, U. S. C. (28 USCA § 391); as one of those "technical errors ＊ ＊ ＊ which do not affect the substantial rights of the parties." Pennsylvania R. R. Co. v. Wm. H. Muller & Co., 15 F.(2d) 535, 538 (C. C. A. 4). The only real contest was as to the plaintiff's negligence in caring for the goods after the sale.

Judgment affirmed.