### MARTIN v. DREXEL ICE CREAM CO.
#### No. 5489.

Circuit Court of Appeals, Seventh Circuit.
Dec. 23, 1935.

Joseph Kamfner, Edwin A. Halligan, Irving Bilton, and Arthur Chittick, all of Chicago, Ill., for appellant.

Seymour Stedman, E. Sydney Feinstein, and Clarence M. Shapiro, all of Chicago, Ill., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and BRIGGLE, District Judge.

ALSCHULER, Circuit Judge.

This was a plenary action brought by the trustee of the bankrupt firm of Korbakes Brothers, and of the two individuals composing it, for the recovery of about $16,500 alleged to have been paid to appellee under circumstances which made the payment a voidable preference under section 60 (b) of the Bankruptcy Act, 11 U.S.C.A. § 96 (b). Judgment was for appellee.

For years bankrupts were in the business of selling ice cream at retail in their several stores in Chicago. Appellee had established in Chicago a very large factory for the wholesale manufacture and sale of ice cream. In 1924, bankrupts made an arrangement with appellee whereby appellee would lend them about $2,000 so that they might pay up their other dealers, and thereafter bankrupts would purchase their ice cream exclusively from appellee. Under this arrangement appellee supplied bankrupts large quantities of ice cream; but from time to time payments did not equal the purchases, and on December 5, 1928, bankrupts gave appellee their note for $11,000, which represented accrued indebtedness of $11,173.24 less a discount of $173.24.

In those years bankrupts and appellee were both large buyers of real estate, and bankrupts had many holdings, some of which were heavily mortgaged and others less so, and a few were without encumbrance. In December, 1928, one of bankrupts' retail stores was discontinued, and in November, 1929, another one was closed, leaving them in the operation of only one store.

From time to time appellee asked bankrupts to make payments, but none was made. Bankrupts had sought for some time to effect a sale of some real estate to appellee, but were unsuccessful. During all this time, and up to the bankruptcy, appellee continued to supply bankrupts with such ice cream as their trade required.

There was testimony that some time about the middle of December, 1930, bankrupts sold a piece of real estate for $20,000, and that a few days thereafter bankrupts paid appellee, in cash, something over $16,000 in settlement of the indebtedness. The amount thus paid is the basis of the action by the trustee. The testimony upon some of these transactions is quite contradictory, and difficult to understand.

Immediately upon the filing of the involuntary petition in bankruptcy against bankrupts a receiver was appointed—January 8, 1931. Adjudication was on February 2, 1931. Declaration was filed September 22, 1931, to which appellee pleaded the general issue. Jury was waived and the cause submitted to the court. Many witnesses were heard in open court and a voluminous record is before us. July 17, 1934, the district judge filed a memorandum as set forth in the margin,* and on same date motions by appellant for new trial and in arrest of judgment were denied, and judgment against appellant was

---

* "The court is finding the issues in this case in favor of the defendant. The evidence shows, I think, that the transfer complained of, made four months before adjudication, was made by the bankrupt, Korbakes Bros., while they were insolvent. Considerable of the testimony was directed to the proof of insolvency. The court, however, is not persuaded that a preponderance of the evidence shows that the Drexel Ice Cream Company had considerable (a) cause to believe that the enforcement of the transfer would effect a preference. That arrangement, in order to constitute a recovery, seems to the court not to have been proved by the plaintiff. It is true that both the bankrupts and the officers of the Ice Cream Company were Greeks. The Drexel Ice Cream Company was doing a large and extensive business and had many customers. The evidence fails to show that the relationship between the officers of the Drexel Ice Cream Company and the bankrupts was of a peculiarly intimate and confidential nature or was of such a nature as to make the officers of the Drexel Ice Cream Company believe that in accepting the transfer they were receiving a preference. The most that can be said, it seems to the court, is that the officers of the Drexel Ice Cream Company had a suspicion at the time the preference was taken, that the bankrupts were insolvent or verging on insolvency. But suspicion is not enough on which to found a verdict."

(a) The word *considerable* between the words *had* and *cause* is evidently a clerical error. The word employed evidently was *reasonable*.

770

entered. No request for findings or holdings was made by either party.

On March 4, 1935, appellant's attorneys entered a motion to correct "the Court's Memorandum of Opinion entered on July 17, A. D. 1934 so as to present a formal special finding of fact and conclusions of law and exceptions thereto nunc pro tunc as of July 17, 1934"; whereupon the court ordered "that the memorandum opinion filed July 17, 1934 by the Court stand as Special Findings of Fact and Conclusions of Law nunc pro tunc as of July 17, 1934." Appellee's counsel objected and excepted.

To present discussion of all the many points and subpoints voluminously urged upon us by the respective parties would require an opinion which would fill a fair-sized book; but in our judgment the case may be properly disposed of without such prolixity.

 In the absence of requests of the parties for findings, this court is not at liberty to review on appeal disputed facts, but all such must be resolved in favor of the judgment of the District Court. Fleischmann Const. Co. v. United States, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624; Law v. United States, 266 U.S. 494, 45 S. Ct. 175, 69 L.Ed. 401; Vicksburg, etc., Ry. Co. v. Anderson-Tully Co., 256 U.S. 408, 41 S.Ct. 524, 65 L.Ed. 1020; St. Louis v. Western Union Tel. Co., 166 U.S. 388, 17 S.Ct. 608, 41 L.Ed. 1044. The court's opinion, or memorandum of opinion, is not a finding of fact or a conclusion of law. Fleischmann Const. Co. v. United States, supra, and cases there cited.

 The undertaking, several terms after judgment, and while the appeal was pending, by a nunc pro tunc order to convert into findings of fact and conclusions of law what in the motion for such order, and in the order itself, was described as the court's "memorandum of opinion," cannot effect that end. Sée United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129; Avendano Bros. v. Gay, 8 Wall. 376, 19 L.Ed. 422; Generes v. Bonnemer, 7 Wall. 564, 19 L.Ed. 227; Jonesboro-Nettleton Road Imp. Dist. v. Klyce (C.C.A.) 15 F.(2d) 918; Mason v. United States (C.C.A.) 219 F. 547. Nothing appears indicating that it was then the intent or purpose of the court to make findings of fact and conclusions of law, and none such appear to have been requested by either party; and no memorandum or minute of the court appears indicating that, at any time at or before the memorandum was filed and the judgment entered, the court had any such intention, or that there was the slightest inadvertence in the filing of the memorandum as was done. There were no such findings. The order of March 4, 1935, made long after the court had lost jurisdiction of the case, and without any contemporary memorandum or other basis for entering it, cannot serve to convert a court's "memorandum of opinion" into such holdings or findings.

We may assume that the District Court concluded, as a matter of fact, that bankrupts were insolvent at the time of the payment in question. The determining fact issue then is: Did appellee, when it received the payment, know of the insolvency, or have reason to believe it existed? Appellant, in his brief, practically states that the principal error on which he relies is the court's conclusion that the evidence does not show appellee had reasonable cause then to believe bankrupts were insolvent.

We are quite in accord with the court's comment that there appears ground for suspicion that appellee was aware of the insolvency; but after weighing the evidence of witnesses, who testified in the court's presence, the view of the court was that the evidence was not sufficient to warrant a finding that appellee had reasonable ground to believe bankrupts insolvent. The court's judgment, wholly apart from its memorandum, necessarily implies this conclusion; and under the circumstances, finding as we do that there was evidence tending to support the court's conclusion, we do not feel at liberty to disturb that judgment, which is therefore affirmed.